[No. S069237. July 13, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN CARLOS CASTENADA, Defendant and Appellant.

**COUNSEL**

Sharon L. Rhodes, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley, Robert M. Foster and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—For the fourth time in roughly as many years, we construe Penal Code section 186.22, a provision of the California Street Terrorism

Enforcement and Prevention Act of 1988, also known as the STEP Act.[1] The three previous decisions, *People v. Zermeno* (1999) 21 Cal.4th 927 [89 Cal.Rptr.2d 863, 986 P.2d 196], *People v. Loeun* (1997) 17 Cal.4th 1 [69 Cal.Rptr.2d 776, 947 P.2d 1313], and *People v. Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713], involved an interpretation by this court of certain phrases in subdivision (b)(1) of section 186.22, which increases the punishment for some gang-related crimes. The case now before us, however, concerns subdivision (a), which states that a violation of this provision is a crime punishable by incarceration either in county jail or in state prison. As relevant here, an element of this offense is that the defendant, in the words of subdivision (a), "actively participates in any criminal street gang."

To prove that a defendant "actively participates" in a gang, must the prosecution show that the defendant held a leadership position in the gang? Or is it sufficient if the evidence establishes that the defendant's involvement with the gang is more than nominal or passive? We conclude the latter.

I

On the evening of October 16, 1995, Juan Venegas and Pimienta Castillo left a Pizza Loca restaurant in Santa Ana and were walking on nearby Sullivan Street when defendant and two companions began to follow them. Defendant pointed a handgun at Venegas and demanded money, while one of his companions made a similar demand of Castillo. Both victims said they had no money. Defendant then took Venegas's watch and tried to pull a gold chain off his neck. When Venegas broke away and screamed for help, defendant and his companions fled. The next day Venegas and Castillo reported the incident to police; both identified defendant from a photographic lineup.

The prosecution charged defendant with robbery, attempted robbery, and active participation in a criminal street gang. It also sought increased penalties, alleging defendant committed the crimes to benefit a criminal street gang. Defendant waived his right to a jury trial. As relevant here, the prosecution presented this testimony:

Prosecution witness Officer Thomas Serafin, an 11-year veteran of the Santa Ana Police Department's gang unit, testified he was familiar with the Goldenwest gang, whose territory included the Pizza Loca restaurant and the block on Sullivan Street where defendant and his companions began to follow victims Venegas and Castillo.

[1]All further statutory references are to the Penal Code.

Seven times between August 1994 and October 16, 1995, the date of the crimes here, Santa Ana police officers saw defendant in the presence of known Goldenwest gang members; on three of these occasions they gave him written notice that Goldenwest was a criminal street gang. At those times, defendant bragged to the officers that he "kicked back" with Goldenwest members and "backed [them] up," but he denied having been initiated into the gang. Officer Serafin explained that gang members commonly use the phrase "kick back" to describe their association with or membership in a gang.

Officer Serafin described how street gang members tend to avoid outsiders, whom they see as lacking in commitment to the gang's interests. In Serafin's view, defendant's numerous contacts with Goldenwest gang members, which we described earlier, indicated defendant's knowledge of the activities of the gang, which would not have allowed him to "hang out" with members of the gang as much as he did had he not been a Goldenwest gang member himself. Officer Serafin described the robbery of Venegas as typical of crimes committed by Goldenwest gang members, who see their crimes as a means of putting local residents on notice of the gang's control of the neighborhood.

The trial court convicted defendant of the crimes charged.[2] On appeal, defendant challenged only his conviction for active participation in a criminal street gang, claiming insufficiency of evidence. The Court of Appeal affirmed the judgment.

## II

Subdivision (a) of section 186.22 (hereafter section 186.22(a)) provides: "Any person who *actively participates* in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years." (Italics added.) ▄▄▄ At issue here is the meaning of the italicized phrase "actively participates."

▄▄▄ "In construing the relevant provisions of the STEP Act, as with any statute, we strive to ascertain and effectuate the Legislature's intent."

---

[2]The trial court sentenced defendant to state prison for three years on the robbery, one year and four months on the attempted robbery, and a total of six additional years for two enhancements (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a) [personal use of firearm]; and § 186.22, subd. (b)(1) [criminal street gang enhancement]). Pursuant to section 654, the court stayed imposition of sentence on the charge we address here, active participation in a criminal street gang (§ 186.22, subd. (a)).

(*People v. Loeun*, *supra*, 17 Cal.4th 1, 8; *People v. Gardeley*, *supra*, 14 Cal.4th 605, 621.) Because statutory language "generally provide[s] the most reliable indicator" of that intent (*People v. Gardeley*, *supra*, at p. 621; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804]), we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context (*People v. Loeun*, *supra*, at p. 9). " 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' " (*Ibid.*)

 The usual and ordinary meaning of "actively" is "being in a state of action; not passive or quiescent" (American Heritage Dict. (3d ed. 1992) p. 18), "characterized by action rather than contemplation or speculation" (Webster's 3d New Internat. Dict. (1961) p. 22). The usual and ordinary meaning of "participates" is "to take part in something (as an enterprise or activity)." (*Id.* at p. 1646.) In summary, one "actively participates" in some enterprise or activity by taking part in it in a manner that is not passive. Thus, giving these words their usual and ordinary meaning, we construe the statutory language "actively participates in any criminal street gang" (§ 186.22(a)) as meaning involvement with a criminal street gang that is more than nominal or passive.

### III

In *People v. Green* (1991) 227 Cal.App.3d 692, 700 [278 Cal.Rptr. 140] (*Green*), the Court of Appeal construed section 186.22(a)'s language "[a]ny person who actively participates in any criminal street gang" as referring to a person whose relationship with a criminal street gang is (1) "more than nominal, passive, inactive or purely technical," and who (2) devotes "all, or a *substantial* part of his time and efforts to the criminal street gang." (Italics added.) In this case, the Court of Appeal had this to say about the word "substantial" in *Green*: "A 'substantial' amount of time does not mean any particular amount or percentage. Instead, substantial means 'true or real; not imaginary.' " Using this standard, the Court of Appeal here concluded there was sufficient evidence that defendant "actively participates" in the Goldenwest gang. Defendant contends the Court of Appeal misinterpreted the *Green* court's use of the word "substantial," insisting that to fall within the *Green* test, a defendant must have a leadership position in the gang. Implicit in defendant's contention is the assumption that we agree with *Green* that section 186.22(a)'s phrase "[a]ny person who actively participates in any criminal street gang" means a person who at least devotes "a substantial part of his time and efforts" to a criminal street gang. As we explain, we do not.

The Court of Appeal in *Green*, *supra*, 227 Cal.App.3d 692, relied on two different due process principles in construing the phrase "actively participates," which is an element of the crime defined in section 186.22(a). It first

looked to the concept of "personal guilt," as articulated in the high court's decision in *Scales v. United States* (1961) 367 U.S. 203 [81 S.Ct. 1469, 6 L.Ed.2d 782] (*Scales*). *Scales* rejected the defendant's due process challenge to the membership clause of the Smith Act, a federal law that prohibited knowingly holding membership in an organization advocating the violent overthrow of the United States government. The court explained: "In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity (here advocacy of violent overthrow), that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment." (*Scales, supra,* 367 U.S. at pp. 224-225 [81 S.Ct. at p. 1484].) This standard is "duly met," the court said, "when the statute is found to reach only 'active' members having also a guilty knowledge and intent, and which therefore prevents a conviction on what otherwise might be regarded as merely an expression of sympathy with the alleged criminal enterprise, unaccompanied by any significant action in its support or any commitment to undertake such action." (*Id.* at p. 228 [81 S.Ct. at p. 1486].) In the text, the high court cited with approval part of the trial court's instruction telling the jury that to convict the defendant it must find that he "was an 'active' member of the [Communist] Party, and not merely 'a nominal, passive, inactive or purely technical' member, with knowledge of the Party's illegal advocacy and a specific intent to bring about violent overthrow 'as speedily as circumstances would permit.' " (*Id.* at p. 220 [81 S.Ct. at p. 1481].)

Later, in discussing the sufficiency of the evidence to satisfy that standard, *Scales* noted the defendant held a leadership position in the Communist Party, directed a party training school, and advised other members on party doctrine. (*Scales, supra,* 367 U.S. at pp. 254-255 [81 S.Ct. at p. 1499].) The court then observed: "Scales's 'active membership' in the Party is indisputable, and that issue was properly submitted to the jury under instructions that were entirely adequate." (*Ibid.*) In a footnote, the high court mentioned this part of the trial court's jury instruction: " 'In determining whether he was an active or inactive member, consider how much of his time and efforts he devoted to the Party. To be active he must have devoted *all, or a substantial part, of his time and efforts* to the Party.' " (*Scales, supra,* 367 U.S. at p. 255, fn. 29 [81 S.Ct. at p. 1499], italics added.) Relying on the italicized language, the Court of Appeal in *Green* construed section 186.22(a)'s phrase "[a]ny person who actively participates in any criminal street gang" as meaning a person who devotes "all, or a substantial part, of his time and efforts to the criminal street gang." (*Green, supra,* 227 Cal.App.3d at p. 700.) *Green* erred in concluding that the United States Supreme Court's decision in *Scales* mandated this construction.

In describing the trial court's instruction as "entirely adequate" for the defendant in light of the "indisputable" evidence of his leadership position in the Communist Party (*Scales, supra*, 367 U.S. at p. 255 [81 S.Ct. at p. 1499]), the high court in *Scales* did not suggest that the defendant was *entitled* to the instruction. The court never said that the Smith Act's membership clause could satisfy the due process requirement of personal guilt only through evidence that a defendant devoted all, or a substantial amount, of his time and efforts to a subversive organization.

Under *Scales*, the due process requirement that criminal liability rest on personal guilt means simply that a person convicted for active membership in a criminal organization must entertain "guilty knowledge and intent" of the organization's criminal purposes. (*Scales, supra*, 367 U.S. 203, 228 [81 S.Ct. 1469, 1486].) When our Legislature enacted section 186.22(a), which is at issue here, it was fully cognizant of the guilty knowledge and intent requirements the high court had articulated in *Scales*. (See Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2013 (1987-1988 Reg. Sess.) June 8, 1987, p. 7 [noting the *Scales* holding that "mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims"].) This explains why the Legislature expressly required in section 186.22(a) that a defendant not only "actively participates" in a criminal street gang (the phrase at issue here), but also that the defendant does so with "knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity," and that the defendant "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." These statutory elements necessary to prove a violation of section 186.22(a) exceed the due process requirement of personal guilt that the United States Supreme Court articulated in *Scales*, as we explain.

As we mentioned earlier, the high court in *Scales, supra*, 367 U.S. 203, 228 [81 S.Ct. 1469, 1485-1486], held that the Smith Act satisfied the due process requirement of personal guilt by requiring proof of a defendant's active membership in a subversive organization with knowledge of and an intent to further its goals. Here, section 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity. Thus, a person who violates section 186.22(a) has also aided and abetted a separate felony offense committed by gang members, as the Court of Appeal in *Green, supra*, 227 Cal.App.3d 692, 703-704, acknowledged. (*Ibid.* [anyone violating § 186.22(a) "would also . . . be criminally liable as an aider and abettor to any specific crime" committed by the gang's members]; see generally *People v. Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60,

674 P.2d 1318] [defining an aider and abettor as one who acts "with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of" an offense (italics omitted)].)

In support of the Court of Appeal's construction in *Green* of the statutory phrase "actively participates," which is an element of the crime defined in section 186.22(a), defendant here contends it accurately reflects legislative intent. Defendant notes that before section 186.22(a)'s enactment, its opponents argued it would impose criminal liability on someone who was only peripherally involved with a criminal street gang. (See Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2013, *supra*, June 8, 1987, p. 4.) Its sponsors replied: "The bill as written will not apply to the so called casual member. To be held criminally culpable, gang members must have the requisite specific intent and knowledge. *AB 2013, in fact, goes beyond the active membership test in Scales*[, *supra*, 367 U.S. 205], *by requiring active participation, rather than mere membership.*" (Assem. Com. on Pub. Safety, Reply Mem., Assem. Bill No. 2013, *supra*, June 8, 1987, p. 2, italics added.) According to defendant, the italicized sentence in the sponsors' response reflects an intent to limit section 186.22(a)'s phrase "actively participates" to someone who devotes all, or a substantial amount of time and efforts to a criminal street gang *and* has a leadership position in the gang. We are not persuaded. The sponsors' reply appears to state (albeit not with great clarity) what we have concluded here: a person liable under section 186.22(a) must aid and abet a separate felony offense committed by gang members. In that way, as the bill's proponents stressed, section 186.22(a) "goes beyond the active membership test in *Scales*," which allowed the criminal conviction of anyone holding active membership in a subversive organization, without requiring that the member aid and abet any particular criminal offense committed by other members.

Defendant here points out that the legislative findings supporting the STEP Act affirm "the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever [and] to lawfully associate with others who share similar beliefs." (§ 186.21.) To ensure that section 186.22(a) not infringe upon these constitutional protections, defendant argues, the Legislature must have intended section 186.22(a)'s element "actively participates" to incorporate the part of the jury instruction definition of "active membership" the high court in *Scales* quoted in the footnote in question. (See *Scales*, *supra*, 367 U.S. 203, 255, fn. 29 [81 S.Ct. 1469, 1499] [referring to the trial court's instruction to the jury describing an active member of the Communist Party as one who " 'devoted all, or a substantial part, of his time and efforts to the Party' "].) We reject defendant's argument. As we have explained, section 186.22(a) imposes criminal liability not

for lawful association, but only when a defendant "actively participates" in a criminal street gang while also aiding and abetting a felony offense committed by the gang's members. (See *ante*, p. 749.)

To support its construction of the phrase "actively participates" in section 186.22(a), the Court of Appeal in *Green* relied not only on the due process concept of personal guilt articulated in *Scales, supra,* 367 U.S. 203, which we just discussed, but also on the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders. (*Green, supra,* 227 Cal.App.3d 692, 700.) These protections are embodied in the due process clauses of both the federal and California Constitutions. (U.S. Const., Amends V, XIV; Cal. Const., art. I, § 7.) They are often referred to collectively as the "fair warning" rule. (*United States v. Lanier* (1997) 520 U.S. 259, 265 [117 S.Ct. 1219, 1224-1225, 137 L.Ed.2d 432]; see *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222]; *People v. Franklin* (1999) 20 Cal.4th 249, 253-254 [84 Cal.Rptr.2d 241, 975 P.2d 30].)

The fair warning rule is generally associated with this statement by United States Supreme Court Justice Oliver Wendell Holmes in a 1931 decision: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a *fair warning* should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." (*McBoyle v. United States* (1931) 283 U.S. 25, 27 [51 S.Ct. 340, 341, 75 L.Ed. 816], italics added.)

The due process concept of fair warning is the underpinning of the vagueness doctrine, which "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " (*United States v. Lanier, supra,* 520 U.S. 259, 266 [117 S.Ct. 1219, 1225], quoting *Connally v. General Construction Co.* (1926) 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322]; *Lanzetta v. New Jersey* (1939) 306 U.S. 451, 453 [59 S.Ct. 618, 619, 83 L.Ed. 888] ["No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."].) Recently, the United States Supreme Court had this to say on the topic: "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." (*Chicago v. Morales* (1999) 527 U.S. 41, 56 [119 S.Ct. 1849, 1859, 144 L.Ed.2d 67, 72 A.L.R.5th 665].)

We mentioned earlier that the Court of Appeal in *Green* narrowly construed section 186.22(a)'s phrase "[a]ny person who actively participates in a criminal street gang" as referring to a person devoting "all, or a substantial part of his time and efforts" to the gang. (*Green, supra,* 227 Cal.App.3d at p. 700.) We do not share the Court of Appeal's view that the fair warning rule compelled this narrow construction.[3]

We have pointed out that, giving the words "actively" and "participates" their usual and ordinary meaning, a person "actively participates in any criminal street gang," within the meaning of section 186.22(a), by "involvement with a criminal street gang that is more than nominal or passive." (See *ante*, pp. 746-747.) As the United States Supreme Court observed in *Scales, supra,* 367 U.S. 203, 223 [81 S.Ct. 1469, 1483], "[t]he distinction between 'active' and 'nominal' membership is well understood in common parlance." Moreover, as we have explained, every person incurring criminal liability under section 186.22(a) has aided and abetted a separate felony offense committed by gang members. (See *ante*, p. 749.) By linking criminal liability to a defendant's criminal conduct in furtherance of a street gang, section 186.22(a) reaches only those street gang participants whose gang involvement is, by definition, "more than nominal or passive."

Through section 186.22(a)'s plainly worded requirements—criminal knowledge, willful promotion of a felony, and active participation in a criminal street gang—our Legislature has made it reasonably clear what conduct is prohibited (*Chicago v. Morales, supra,* 527 U.S. 41, 57-58 [119 S.Ct. 1849, 1859-1860]) by "delineat[ing] the range of forbidden conduct with particularity" (*United States v. Lanier, supra,* 520 U.S. 259, 264-265 [117 S.Ct. 1219, 1224]). And there is nothing in section 186.22(a)'s language that would encourage arbitrary or discriminatory law enforcement. (*Chicago v. Morales, supra,* 527 U.S. at pp. 57-58; see also *Helton v. State* (Ind.Ct.App. 1993) 624 N.E.2d 499 [rejecting vagueness challenge to statute prohibiting active participation in a criminal street gang].)

IV

Does the evidence show that defendant's involvement with the Goldenwest gang was more than nominal or passive? We conclude it does.

In the 14 months before the crimes in this case, Santa Ana police officers on seven occasions saw defendant in the company of known Goldenwest

---

[3]We, of course, do not disagree with the Court of Appeal's further statement in *Green, supra,* 227 Cal.App.3d at page 700, that a person actively participates in a criminal street gang by involvement with the gang that is "more than nominal, passive, inactive or purely technical." That statement is fully consistent with our conclusion in this case. (*Ante*, pp. 746-747.)

gang members, and on four of these gave him written notice that Goldenwest was a criminal street gang under the STEP Act. On those occasions, defendant bragged to the officers that he "kicked back" with the Goldenwest gang, a phrase that gang expert Officer Thomas Serafin explained was gang parlance for being associated with or being a member of the gang. On the date of the crimes here, defendant, armed with a handgun and in the company of two others, pursued victims Venegas and Castillo in the Goldenwest gang's territory, demanded money, forcibly took Venegas's watch, and tried to rip a gold chain off his neck. Gang expert Serafin described the crime as typical of those committed by Goldenwest gang members to put local residents on notice of the gang's control of the neighborhood.

Defendant does not contest here that through the robbery and attempted robbery in this case, he "promote[d], further[ed], or assist[ed]" felonious criminal conduct of the Goldenwest gang in violation of section 186.22(a). Nor does he suggest that those crimes were other than felonies "committed for the benefit of, at the direction of, or in association with" a criminal street gang, thus supporting the enhanced criminal penalties the trial court imposed under section 186.22, subdivision (b)(1). To summarize, through evidence of the crimes defendant here committed, his many contacts on previous occasions with the Goldenwest criminal street gang, and his admissions by bragging to police officers on those occasions of gang association or membership, the prosecution presented sufficient proof that defendant "actively participate[d]" in a criminal street gang within the meaning of section 186.22(a).

### DISPOSITION

We affirm the judgment of the Court of Appeal, upholding defendant's conviction under section 186.22(a).

George, C. J., Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.