188 Cal.App.4th 722 (2010)
115 Cal. Rptr. 3d 779
THE PEOPLE, Plaintiff and Respondent,
v.
JOE RODRIGUEZ, Jr., Defendant and Appellant.
No. C060227.
Court of Appeals of California, Third District.
September 20, 2010.
Certified for Partial Publication.[1]
*724 Grace Lidia Suarez, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Brook Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
BLEASE, Acting P. J.
This case tenders the question whether the substantive criminal street gang offense, Penal Code section 186.22, subdivision (a), *725 which concerns the active participation of a person in the criminal activity of a gang, applies to an attempted robbery by a member of a criminal street gang acting alone.[2]
Section 186.22 is part of the California Street Terrorism Enforcement and Prevention Act, also known as the "STEP Act." (§ 186.20.) Section 186.22 contains two relevant provisions, a substantive offense in subdivision (a), and a sentence enhancement in subdivision (b)(1). The two subdivisions are meant to do different work. As we shall explain, much of the confusion in the case law construing subdivision (a) arises from a failure to distinguish the subject matters of the two subdivisions. Not all gang conduct is covered by subdivision (a); what is not covered by subdivision (a) is generally covered by subdivision (b)(1).
The defendant was convicted by a jury of attempted second degree robbery (Pen. Code, §§ 211, 664; count I) and active participation in a criminal street gang (§ 186.22, subd. (a); count III). The jury found true an enhancement that he committed the attempted robbery for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).)[3]
Subdivision (a) of section 186.22 provides that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" is guilty of a felony or misdemeanor.
Subdivision (b)(1) provides for the enhancement of a felony sentence when the offense benefits a criminal street gang and is intended to promote the criminal conduct of the gang. (§ 186.22, subd. (b)(1).) The trial court granted defendant's motion for a new trial of the enhancement for lack of supporting evidence. The court explained: "It's beyond a reasonable doubt that Mr. Rodriguez is a member of a gang, the Norteños; that he was active. There is no evidence beyond that to support the gang enhancement.... [¶] ... [W]e have no evidence that the area where the crime was committed had anything to do with gang territory, gang turf. There was speculation from the experts that maybe Mr. Rodriquez's tattoos at least, in part, may have been *726 visible, although the victim saw no tattoos. There was no gang language used during the attack. There were no gang signs. There is simply nothing beyond the fact that he is a gang member that would support that finding ...." (See In re Frank S. (2006) 141 Cal.App.4th 1192, 1199 [46 Cal.Rptr.3d 839].)[4]
On appeal defendant contends this evidentiary hiatus also required the trial court to dismiss his conviction of the substantive, section 186.22, subdivision (a), criminal street gang offense for lack of substantial supporting evidence. He argues that the evidence fails to show a violation of the third element of the offense, that he "willfully promote[d], further[ed], or assist[ed] in ... felonious criminal conduct by members of [his] gang." We agree.
It is not sufficient for conviction under subdivision (a) of section 186.22, that the defendant knowingly and actively participate in gang activities. The defendant must promote, further or aid in the commission of a separate felony offense "by members of that gang," i.e., the gang in which he is an active participant. (Italics added.) The leading case is People v. Castenada (2000) 23 Cal.4th 743 [97 Cal.Rptr.2d 906, 3 P.3d 278] (Castenada). The court said: "[S]ection 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity. Thus, a person who violates section 186.22(a) has also aided and abetted a separate felony offense committed by gang members ...." (Id. at p. 749, italics added.) This includes, on the facts in Castenada, the perpetration of a felony in concert with other members of a gang. (Id. at p. 745.) Castenada precisely reads the grammar of section 186.22, subdivision (a). "[To] assist[] in any felonious criminal conduct by members of that gang" is to aid and abet its commission. It requires perforce that there be more than one participant.[5] The same is true of furthering or promoting criminal conduct by others. "[To] promote[ or] further[] ... felonious criminal conduct by members of [a] gang" requires that the perpetrator promote or further a "specific felony" (as Castenada says) of other members of the gang. It makes no sense to say that a person has promoted or furthered his own criminal conduct. The subdivision is not satisfied by an intention to promote, further or assist a gang in its primary activities, including the criminal offenses it customarily engages in. That is a matter that is covered by the enhancement provision of subdivision (b)(1) of section 186.22, as to which the trial court granted a new trial.
Subsequent Court of Appeal cases say or suggest that Castenada is not limited to concerted action by members of a gang in the commission of a separate felony, that subdivision (a) of section 186.22 also applies to the sole *727 perpetrator of an offense by a gang member without the criminal involvement of others who are gang members. (People v. Ngoun (2001) 88 Cal.App.4th 432 [105 Cal.Rptr.2d 837] (Ngoun); People v. Salcido (2007) 149 Cal.App.4th 356 [56 Cal.Rptr.3d 912] (Salcido).) Salcido reasons that in each of these two cases "`[t]he evidence supports a reasonable inference that the [crimes] were intended by appellant to promote, further and assist the gang in its primary activitiesthe commission of criminal acts and the maintenance of gang respect.'" (People v. Salcido (2007) 149 Cal.App.4th at p. 368, italics added.) A recent case, People v. Sanchez (2009) 179 Cal.App.4th 1297 [101 Cal.Rptr.3d 639], follows these cases.
In singling out the element of intention, a term that does not appear in subdivision (a) of section 186.22, Salcido not only departs from the language of subdivision (a), and Castenada's straightforward reading of it, but replaces the third element of subdivision (a) with the third element of subdivision (b) of section 186.22, the gang enhancement provision. The manifest difference is between aiding gang members in the commission of a separate crime and intending generally to aid the gang in its primary activities.
Castenada rejected Salcido's view. "As we have explained, section 186.22(a) imposes criminal liability not for lawful association, but only when a defendant `actively participates' in a criminal street gang while also aiding and abetting a felony offense committed by the gang's members." (Castaneda, supra, 23 Cal.4th at pp. 750-751.)
Since defendant was the sole perpetrator of an attempted robbery that did not involve felonious conduct by other persons, let alone members of the gang of which he was a member, we shall reverse the judgment of conviction for violation of section 186.22, subdivision (a). In all other respects we shall affirm the judgment.

FACTS
On May 10, 2007, defendant, who lived in Woodland, was in Marysville in Yuba County where his girlfriend lived. At approximately 10:23 p.m., Stanley Olsen stepped out of his truck and onto a Marysville street. A person behind him said something that he did not fully hear. Olsen turned and saw defendant, whom he did not recognize, coming up to him. Olsen asked defendant if he knew him; defendant responded with a racial epithet and a threat to kill Olsen. Defendant was wearing jeans and a T-shirt that covered his arms to five inches below the shoulder.
Olsen stood his ground while defendant approached him so that the two men's chests were touching. Defendant demanded money from Olsen and *728 threatened to beat him up. Olsen told defendant that he "didn't have time for this" and that defendant "needed to get away from" him. Defendant then punched Olsen in the jaw.
After being punched, Olsen "grappled" with defendant and they went to the ground with defendant on top. When Olsen tried to get up, defendant punched him in the head and back. Olsen received injuries above and below his right eye; below his left ear; and on his chin, left elbow, right hand, and left forearm.
Olsen got up, ran three or four steps, and turned to see if defendant was following, which he was not. Olsen told a friend to call the police.
A woman grabbed hold of defendant and pulled him into a nearby apartment where defendant's girlfriend lived. Officers arrived on the scene and were directed to where defendant had fled. The officers knocked on the door, announced their presence, and requested that the door be opened, but there was no response. Eventually the tenant, Serena Torres, defendant's girlfriend, contacted the officers and allowed them to search the apartment for defendant. Defendant's sister, Dena Rodriguez, who was present at the time in the apartment with her baby, told officers that defendant was in a locked bedroom and that he was the person they were looking for.
Officers found defendant hiding under the bed. He stated that he was sorry and that he had not wanted to be arrested because his parole agent had not authorized him to be in Marysville. At an ensuing field showup, Olsen identified, defendant as his attacker.
At the jail following his arrest, defendant was asked whether he would have any problems being housed with southern or Sureño inmates. Defendant replied that "there's a possibility there would be a problem." Defendant was asked whether he was a gang member, and he answered, "Yes, maybe a little bit."
Jail inmates are classified "to make sure that inmates are housed with ... like inmates, so there's no fighting and no problems." During this process defendant was asked if he was an active Norteño; he said, "Yes," and indicated that he was from Woodland. He also indicated that his rivals were "southerners." The classification officer noted that defendant had his surname and the words "northern warrior" tattooed on his back in red and black ink, which are colors used by Norteños.
Yuba County Sheriff's Sergeant Allan Garza was called as an expert on criminal street gangs. The jury was admonished that the facts to which he would testify would form a framework for his opinion and were not being admitted for their truth.
*729 Garza estimated that there were 150 to 200 Norteños in Yuba County. Robbery was a primary activity of Norteños in the Yuba County area. Garza testified that he had conducted a robbery investigation of Anthony Matta, who was a validated Norteño according to the Yuba City Police Department. In August 2007, Matta had been convicted of grand theft from the person of another (§ 487, subd. (c)) with a gang allegation (§ 186.22, subd. (b)(1)). Documents related to Matta's conviction were introduced into evidence.
Garza testified that defendant's tattoos included the letter "N" and the number "14" on his chest. Because N is the 14th letter of the alphabet, the letter and number are commonly associated with the Norteño gang. The tattooed words, "northern" on the back of the tricep area of defendant's upper left arm and "warrior," on the back of the tricep area of his upper right arm identify defendant as a warrior for the Norteño gang. Defendant's surname, Rodriguez, tattooed in red ink, was significant because Norteños have adopted red as their color. His tattoos of an Aztec warrior, skulls, and a helmet were significant because Norteño gang members have adopted the Aztec warrior as a symbol of their fierceness.
Garza testified, based upon a report by another officer and without conducting a background check on defendant, that during several police contacts in 1995 and 1999 (apparently in Yolo County), defendant admitted being a Norteño gang member and had been observed wearing gang colors and clothing and displaying gang hand signs.
Based on the foregoing facts, Garza opined that defendant was an active Norteño gang member. Based on a hypothetical question reflecting the facts of the case, as well as his opinion that some portion of defendant's tattoos would be visible if he were wearing a T-shirt, Garza opined that the attempted robbery of Olsen was committed for the benefit of the Norteño gang. There was no testimony that the victim of the attempted robbery saw the tattoos on the backs of defendant's arms. Garza opined that the crime benefited the gang because it proved to fellow gang members that defendant was willing to commit crimes for the gang; the crime instilled fear of the gang in the general citizenry, which made victims and witnesses afraid to testify against the gang; and this made it easier for gang members to commit and get away with crimes.[6] However, Garza had not conducted a background check of defendant and did not know whether he belonged to a subset of the Norteños in "the Yuba-Sutter area ...."
Marysville Police Sergeant Christian Sachs testified in the manner of an expert on criminal street gangs. The jury was admonished that the facts to *730 which he would testify would form a framework for his opinion and were not being admitted for their truth. Sachs testified that members of the Norteño gang associate themselves with the colors red and black; wear red shoelaces and other red clothes; have gang tattoos; associate themselves with the number 14 because "N" is the 14th letter of the alphabet; may have one dot tattooed on one hand and four dots on the other, symbolizing the number 14; and may have certain unique hairstyles.
Sachs testified that there were more than three Norteños in the area and that robbery is a primary activity of the gang. Sachs investigated an attempted homicide case in Marysville in which three Norteño gang membersJohn Damian Williams, Steven Joseph Echevarria, and Alfredo Dominguezstabbed someone who had made fun of their haircuts and was believed to be a member of a rival gang. The men were convicted and admitted an allegation that the crime was committed for the benefit of a criminal street gang. Documents related to the three gang members' convictions were introduced into evidence.
Sachs testified that he reviewed Woodland, Yolo County, police records from 1995 through 1999 that documented defendant's membership in the Norteño gang in that area, his admission of membership, and his having been seen in the company of other gang members. Sachs opined that, based on defendant's tattoos, his self-admission during a booking and classification process in Woodland, his red shoelaces, his red cigarette lighter, and the contents of the Woodland Police records, defendant was an active member of the Norteño gang.
Based on a hypothetical question Sachs opined that the present crime was committed for the benefit of a criminal street gang. The crime benefited the gang because it served to intimidate the public; made the public afraid of the gang and created the fear of retribution should anyone cross the gang; and served to intimidate actual and potential witnesses of crimes committed by the gang, thus causing witnesses to not come forward or cooperate with law enforcement.

DISCUSSION

I

Forfeiture[*]

*731 II

The Gang Participation Offense
Defendant contends the trial court should have dismissed his conviction of the substantive gang offense defined by section 186.22, subdivision (a), for insufficiency of the evidence to show that he participated in a felony with other gang members. He reasons that the evidence the trial court found insufficient in granting a new trial of the sentence enhancement (§ 186.22, subd. (b)(1)), the lack of substantial evidence connecting the offense to the gang, also is insufficient to sustain a conviction of the substantive gang offense (§ 186.22, subd. (a)). Resolution of the issue turns on the facts of the case and on a comparison of subdivision (a) with subdivision (b)(1).
We shall conclude that, although the subdivisions describe different aspects of gang involvement, the evidence that the trial court found was insufficient to support the gang enhancement is also insufficient to support the substantive gang participation offense.

A.

The Trial Court's Findings
After the jury found defendant committed an attempted robbery for the benefit of his gang (§ 186.22, subd. (b)(1)), the trial court dismissed the enhancement allegation for insufficient evidence.
In doing so, the court explained: "The Court's convinced there is insufficient evidence for that finding to stand. It's beyond a reasonable doubt that Mr. Rodriguez is a member of a gang, the Norteños; that he was active. There is no evidence beyond that to support the gang enhancement. There's nothing about the crime that connects it to the activities of the gang other than the expert's statement that robbery is one of the crimes Norteños commit. The cases that I've read say there's got to be something more than gang membership and/or association.
"In this case, we have no evidence that the area where the crime was committed had anything to do with gang territory, gang turf. There was speculation from the experts that maybe Mr. Rodriquez's tattoos at least, in part, may have been visible, although the victim saw no tattoos.[8] There was *732 no gang language used during the attack. There were no gang signs. There is simply nothing beyond the fact that he is a gang member that would support that finding, and the Court will, in fact, grant the Defendant's motion for a new trial as to the gang enhancement."
The testimony showed that defendant had been a member of a Norteño gang in Woodland, Yolo County, and that his girlfriend lived in Marysville near where the attempted robbery occurred. The officers' testimony addressed the subject of gang activity in the area of Marysville and assumed that the Norteño gang in Marysville was connected with the Norteño gang in Woodland. They offered no testimony that the Yolo County Norteños were a subset of the Yuba County Norteños.
The trial court found that the only connection between the attempted robbery and a criminal street gang was defendant's active participation in the Norteños in Woodland, Yolo County. No evidence was tendered that defendant was involved with Norteños in Yuba County. As noted, the trial court said "we have no evidence that the area where the crime was committed had anything to do with gang territory, gang turf."

B.

Penal Code Section 186.22, Subdivision (a)
The STEP Act, in section 186.22, contains two relevant provisions, a substantive offense in subdivision (a), and a sentence enhancement in subdivision (b)(1). Since the precise language of each is important for the resolution of the substantial evidence issue, we quote them in full.
Subdivision (a)(1) of section 186.22 states in pertinent part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" shall be punished as a felony or misdemeanor.
Subdivision (b)(1) of section 186.22 provides, with exceptions not relevant here, that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall" be punished by an enhanced penalty consecutive to the punishment for the felony.
*733 (1) The subdivisions define different aspects of criminal gang involvement. The substantive offense defined in section 186.22, subdivision (a) has three elements. "[(1)] Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive .... [(2)] `[K]nowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and [(3)] ... that the person `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' (§ 186.22(a).)" (People v. Lamas (2007) 42 Cal.4th 516, 523 [67 Cal.Rptr.3d 179, 169 P.3d 102].) The enhancement provision, section 186.22, subdivision (b)(1), also has three elements. With exceptions not relevant here, it requires (1) conviction of a predicate felony, (2) committed for the benefit of, at the direction of, or in association with a criminal street gang, and (3) with the specific intent to promote, further or assist in any criminal conduct by criminal street gang members. (§ 186.22, subd. (b)(1).)
The purpose of the enhancement is to enhance the sentence of a predicate felony that was committed both to benefit a criminal street gang and with the intent to promote, further or assist any criminal conduct by its members. By contrast, the substantive offense defined by subdivision (a) requires that the defendant promote, further or assist separate "felonious criminal conduct by members of that gang," the gang in which the defendant is an active participant. (§ 186.22, subd. (a), italics added.) The operative distinction is the difference between the aiding and abetting of felonious conduct by gang members and the intention to do so.
(2) The leading case is Castenada. At issue was the meaning of the phrase "actively participates" in section 186.22, subdivision (a). The court said the Legislature in adopting the legislation was cognizant of the holding in Scales v. United States (1961) 367 U.S. 203 [96 L.Ed.2d 782, 81 S.Ct. 146], "that `mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims.' "(Castenada, supra, 23 Cal.4th at p. 749.) "This explains [said the court] why the Legislature expressly required in section 186.22(a) that a defendant not only `actively participates' in a criminal street gang ..., but also that the defendant does so with `knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and that the defendant `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' These statutory elements necessary to prove a violation of section 186.22(a) exceed the due process requirement of personal guilt that the United States Supreme Court articulated in Scales .... [¶] ... Here, section 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity. Thus, a person who violates section 186.22(a) has also aided and abetted a separate felony offense committed by gang members, as the Court of Appeal in [People v.] Green [(1991)] 227 *734 Cal.App.3d 692, 703-704 [278 Cal.Rptr. 140], acknowledged." (Castenada, supra, 23 Cal.4th at p. 749.)
This definition was embodied in CALJIC former No. 6.50 (6th ed. 1996), and CALCRIM No. 1400. "To prove that the defendant willfully assisted, furthered, or promoted a crime, the People must prove [inter alia] that: ... [¶] 4. The defendant's words or conduct did in fact aid and abet the commission of the crime." (CALCRIM No. 1400.)
In the year following Castenada, Ngoun, supra, 88 Cal.App.4th 432, reasoned that it would be inconsistent with the objective and intent of section 186.22, subdivision (a) to restrict its language to aiders and abettors and not extend it to perpetrators. The court said: "Under the language of subdivision (a), liability attaches to a gang member who `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' (§ 186.22, subd. (a).) In common usage, `promote' means to contribute to the progress or growth of; `further' means to help the progress of; and `assist' means to give aid or support. (Webster's New College Dict. (1995) pp. 885, 454, 68.) The literal meanings of these critical words squares with the expressed purposes of the lawmakers. An active gang member who directly perpetrates a gang-related offense `contributes' to the accomplishment of the offense no less than does an active gang member who aids and abets or who is otherwise connected to such conduct. Faced with the words the legislators chose, we cannot rationally ascribe to them the intention to deter criminal gang activity by the palpably irrational means of excluding the more culpable and including the less culpable participant in such activity." (Ngoun, supra, 88 Cal.App.4th at p. 436.)[9]
(3) What Ngoun wholly misses is the grammar of the statute. The terms "promote[], further[], or assist[]" modify the phrase "felonious criminal conduct by members of that gang," which Castenada says refers to "a specific felony committed by gang members ...." (Castenada, supra, 23 Cal.4th at p. 749, italics added.) The reference to "by members of that gang," does not refer to the kinds of offenses which the gang may customarily commit. Thus, to assist in the commission of an offense, i.e., to aid and abet its commission, requires perforce that there be more than one participant. The same is true of *735 promoting or furthering the criminal conduct of others.[10] It makes no sense to say that a person has promoted or furthered his own criminal conduct.
(4) We do agree, however, that perpetrators may come within the language of section 186.22, subdivision (a). Perpetrators and aiders and abettors are both principals in the commission of a crime and it may be difficult or unnecessary to assign a particular role to the participants in collective criminal conduct. "[T]he dividing line between the actual perpetrator and the aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator and in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (People v. McCoy (2001) 25 Cal.4th 1111, 1120 [108 Cal.Rptr.2d 188, 24 P.3d 1210].)
Castenada does not rule out perpetrators who act in criminal concert with other gang members, as shown by the facts of the case. It described the defendant's offense as follows: "On the evening of October 16, 1995, Juan Venegas and Pimienta Castillo left a Pizza Loca restaurant in Santa Ana and were walking on nearby Sullivan Street when defendant and two companions[11] began to follow them. Defendant pointed a handgun at Venegas and demanded money, while one of his companions made a similar demand of Castillo. Both victims said they had no money. Defendant then took Venegas's watch and tried to pull a gold chain off his neck. When Venegas broke away and screamed for help, defendant and his companions fled." (Castenada, supra, 23 Cal.4th at p. 745.) The Ngoun facts are similar. The defendant, an active gang member, went armed with other gang members to a party where rival gang members would be and fired into a crowd that included the rivals after asking a fellow gang member to "`watch his back.' "(Ngoun, supra, 88 Cal.App.4th at p. 437.)
Subsequently, People v. Salcido, read Ngoun to eliminate participation by members of a gang in the defendant's criminal conduct as an element of the offense. "[I]f the evidence proved any criminal conduct by Salcido, it was *736 only as the perpetrator of the crimes establishing the felonious criminal conduct with which he was charged. This conduct included illegal possession of a weapon, receiving stolen property, carrying a loaded firearm in a vehicle, or carrying a concealed firearm in a vehicle." (Salcido, supra, 149 Cal.App.4th at p. 369.) Although "Salcido was accompanied by known gang members ... there was no evidence they participated in Salcido's crimes." (Id. at p. 368.) The court then quoted from Ngoun: "[H]owever, `[t]he evidence supports a reasonable inference that the [crimes] were intended by [the defendant] to promote, further and assist the gang in its primary activitiesthe commission of criminal acts and the maintenance of gang respect.'" (Ibid., italics added.)
In so doing Salcido replaced the third element of subdivision (a) of section 186.22, with the third element of subdivision (b)(1) of section 186.22. The manifest difference is that subdivision (a) requires that the defendant actually participate as a principal in the felonious conduct of members of a gang, while subdivision (b)(1) requires that the defendant generally intend to promote "any criminal conduct by gang members ...."
Salcido chose to not follow Castenada's construction of section 186.22, subdivision (a) that "a person liable under section 186.22(a) must aid and abet a separate felony offense committed by gang members" (Castaneda, supra, 23 Cal.4th at p. 750) essentially because it exceeds the due process requirement of personal guilt articulated in Scales. The court said: "On its own, the statement arguably supports Salcido's position [that the section does not apply to an offense wholly committed by the defendant]. When read in context, however, it is part of the Supreme Court's explanation that section 186.22, subdivision (a), avoids punishing mere association with a disfavored organization and satisfies the due process requirement of personal guilt ...." (Salcido, supra, 149 Cal.App.4th at p. 367, italics added.)
Salcido and Ngoun were followed by People v. Sanchez, supra, 179 Cal.App.4th 1297, in rejecting the view that section 186.22, subdivision (a)" `imposes liability on perpetrators only if they commit the crime in concert with other gang members.'" (179 Cal.App.4th at p. 1308.) Sanchez, like Salcido and Ngoun, does not parse the applicable language of section 186.22, subdivision (a).
Salcido does not explain why it can ignore a Supreme Court construction of a statute merely because it sets a standard in excess of that required by the United States Constitution. Nor does it explain how it equates the third elements of subdivisions (a) and (b)(1) of section 186.22 by equating the actual participation in criminal conduct with the intention to do so. Lastly, although construing the terms "promote[]," "further[]" and "assist[]," it does not explain how the promotion of a separate crime is consistent with its view that no separate crime need be committed.
*737 (5) For these reasons we follow the explicit language of section 186.22, subdivision (a) and Castenada's straightforward construction of it. Since defendant was the sole perpetrator of an attempted robbery that did not involve felonious conduct by other persons, let alone members of the gang of which he was a member, we shall reverse the judgment of conviction for violation of section 186.22, subdivision (a).

III-V[*]

DISPOSITION
The judgment of conviction of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); count III) is reversed. In all other respects the judgment is affirmed.
Butz, J., concurred.
SIMS, J., Concurring and Dissenting.
I concur in parts I, III and IV of the majority opinion.
I respectfully dissent from the analysis and conclusion of part II. In my view, substantial evidence supports defendant's conviction for active participation in a criminal street gang, a violation of Penal Code section 186.22, subdivision (a).[1]
In my opinion, two cases decided by the Court of Appeal for the Fifth Appellate DistrictPeople v. Ngoun (2001) 88 Cal.App.4th 432 [105 Cal.Rptr.2d 837] (Ngoun) and People v. Salcido (2007) 149 Cal.App.4th 356 [56 Cal.Rptr.3d 912] (Salcido)are both correctly decided. These cases have been recently followed by Division Two of the Fourth Appellate District in People v. Sanchez (2009) 179 Cal.App.4th 1297, 1307-1308 [101 Cal.Rptr.3d 639]. I would follow Ngoun and Salcido here.
In Ngoun, the court held "that Penal Code section 186.22 applies to the perpetrator, as well as to aiders and abettors, of criminal gang felonies." (Ngoun, supra, 88 Cal.App.4th at p. 434.)
In Salcido, the Court of Appeal approved the following jury instruction on section 186.22(a) given by the trial court: "`To prove that the defendant is *738 guilty of this crime[,] the People must prove that, one, the defendant actively participated in a criminal street gang. Two, when the defendant participated in the gang[,] he knew that members of the gang engaged in or have engaged in a pattern of criminal gang activity. [¶] And, three, the defendant willfully promoted, furthered or assisted by either directly and actively committing a felony offense or aiding and abetting felonious criminal conduct by members of that gang.'" (Salcido, supra, 149 Cal.App.4th at pp. 365-366, 369.)
Section 186.22(a) and (b), provide, as pertinent, as follows:
"(a) Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.
"(b)(1) ... any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished ...."
On this record, there is no dispute that substantial evidence supports the conclusion defendant actively participated in a criminal street gang (the Norteños) with knowledge that its members engage in a pattern of criminal gang activity.
At issue is section 186.22(a)'s requirement that a violation occurs when one "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang ...." (Italics added.)
"Contrary to what is required for an enhancement under section 186.22(b), section 186.22(a) does not require that the crime be for the benefit of the gang. Rather, it `punishes active gang participation where the defendant promotes or assists in felonious conduct by the gang. It is a substantive offense whose gravamen is the participation in the gang itself.' (People v. Herrera (1999) 70 Cal.App.4th 1456, 1467 [83 Cal.Rptr.2d 307], fns. omitted.)" (People v. Martinez (2008) 158 Cal.App.4th 1324, 1334 [70 Cal.Rptr.3d 680].)
Both Ngoun, supra, 88 Cal.App.4th at page 436 and Salcido, supra, 149 Cal.App.4th at page 368, concluded that the actual perpetrator of an offense *739 can violate section 186.22(a). Ngoun reasoned, "An active gang member who directly perpetrates a gang-related offense `contributes' to the accomplishment of the offense no less than does an active gang member who aids and abets or who is otherwise connected to such conduct." (Ngoun, supra, 88 Cal.App.4th at p. 436.) This rings true to me, as it did with the Salcido court. (Salcido, supra, 149 Cal.App.4th at p. 367.) The majority "agree ... that perpetrators may come within the language of section 186.22, subdivision (a)." (Maj. opn., ante, at p. 735.)
It appears that the real sticking point between the majority and Salcido is the majority's view that section 186.22(a) requires that the perpetrator act in concert with other gang members. The majority give the following statutory language in section 186.22(a) its strict literal interpretation: "promotes, furthers, or assists in any felonious criminal conduct by members of that gang ...." (Italics added.)
In this case, only one member of the gangdefendantwas promoting the felonious criminal conduct by himself committing an attempted robbery.
I would not insist that "members" be given its literal, plural meaning.
Section 7 provides in pertinent part, "Words used in [the Penal Code] in the present tense include the future as well as the present ... the singular number includes the plural, and the plural the singular ...." Subdivision 16 of section 7 further counsels that "Words and phrases must be construed according to the context ...." By these rules, "members" can mean "member." It should.
Section 186.22(a) is a part of the California Street Terrorism Enforcement and Prevention Act. (§ 186.20 et seq.)
Section 186.21 of that Act provides in pertinent part: "The Legislature ... finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. The Legislature finds that there are nearly 600 criminal street gangs operating in California, and that the number of gang-related murders is increasing. The Legislature also finds that in Los Angeles County alone there were 328 gang-related murders in 1986, and that gang homicides in 1987 have increased 80 percent over 1986. It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs."
*740 "Faced with the words the legislators chose [in section 186.22(a)], we cannot rationally ascribe to them the intention to deter criminal gang activity by the palpably irrational means of excluding the more culpable and including the less culpable participant in such activity." (Ngoun, supra, 88 Cal.App.4th at p. 436.)
By insisting on the literal, plural definition of "members," the majority would preclude a conviction for active participation in a criminal street gang (§ 186.22(a)) where the leader of the Norteños, acting entirely alone, got into his car and drove into Sureño territory, shot and killed several Sureños, and pinned notes to their shirts reading, "Norteños Rule."
In light of the purposes of the California Street Terrorism Enforcement and Prevention Act, quoted above, I cannot believe the Legislature intended such an absurd result. "`We must ... give the [statutory] provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. [Citation.]'" (Renee J. v. Superior Court (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876], quoting Marshall M. v. Superior Court (1999) 75 Cal.App.4th 48, 55 [88 Cal.Rptr.2d 891].)
The majority argue that the grammar of section 186.22(a) requires that the perpetrator must aid others. At issue is the requirement that, in order to violate section 182.22(a), a person "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang ...."
The majority argue: "[To] `assist[] in any felonious criminal conduct by members of that gang' is to aid and abet its commission. It requires perforce that there be more than one participant. The same is true of furthering or promoting criminal conduct by others." (Maj. opn., ante, at p. 726, fn. omitted.)
The majority are right about the meaning of the word "assists." Someone does not "assist" himself.
But the majority are wrong about the meaning of the words "promotes [or] furthers ... in any felonious criminal conduct." Someone can "promote" or "further" felonious criminal conduct by committing the offense himself, without the participation or aid of others. Thus, Ngoun explains: "Given the objective and intent of subdivision (a), we find good reasons not to construe section 186.22[(a)], in the restricted manner advocated by appellant and instead to conclude that this subdivision applies to the perpetrator of felonious gang-related criminal conduct as well as to the aider and abettor. Courts *741 should give statutory words their plain or literal meaning unless that meaning is inconsistent with the legislative intent apparent in the statute. [Citations.] Under the language of subdivision (a), liability attaches to a gang member who `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' (§ 186.22[(a)].) In common usage, `promote' means to contribute to the progress or growth of; `further' means to help the progress of; and `assist' means to give aid or support. (Webster's New College Dict. (1995) pp. 885, 454, 68.) The literal meanings of these critical words squares with the expressed purposes of the lawmakers. An active gang member who directly perpetrates a gang-related offense `contributes' to the accomplishment of the offense no less than does an active gang member who aids and abets or who is otherwise connected to such conduct." (Ngoun, supra, 88 Cal.App.4th at p. 436.)
The grammar of section 186.22(a) does not preclude giving the term "members" a singular construction in accordance with the rule of section 7.
The majority argue that their construction of the statute is compelled by the opinion of our Supreme Court in People v. Castenada (2000) 23 Cal.4th 743 [97 Cal.Rptr.2d 906, 3 P.3d 278]. (Maj. opn., ante, at p. 735.) However, the court in People v. Sanchez, supra, 179 Cal.App.4th 1297, correctly pointed out that Castenada was not called upon to decide whether section 186.22(a), requires a defendant to aid and abet other gang members or act in concert with them:
"[In Castenada] in addition to gang participation, the defendant was convicted of robbery and attempted robbery. (People v. Castenada, supra, 23 Cal.4th at pp. 745-746.) Victims Venegas and Castillo had been walking down the street together `when defendant and two companions began to follow them. Defendant pointed a handgun at Venegas and demanded money, while one of his companions made a similar demand of Castillo. Both victims said they had no money. Defendant then took Venegas's watch and tried to pull a gold chain off his neck. When Venegas broke away and screamed for help, defendant and his companions fled.' (Id. at p. 745.) Thus, the defendant was the direct perpetrator of the robbery of Venegas; however, he was arguably only an aider and abettor of the attempted robbery of Castillo. To put it another way, there was substantial evidence that the defendant had aided and abetted a felony.
"In any event, as the court noted later in Castenada, there the defendant `d[id] not contest ... that through the robbery and attempted robbery ..., he "promote[d], further[ed], or assist[ed]" felonious criminal conduct of [a] gang in violation of ... section 186.22(a).' (People v. Castenada, supra, 23 Cal.4th at p. 753.) Hence, as the Ngoun court noted, in Castenada itself, the Supreme *742 Court was not actually called upon to decide whether evidence that the defendant perpetrated a felony could be sufficient to satisfy the promote/further/assist element.
"For precisely that reason, however, the language in Castenada equating the promote/further/assist element to aiding and abetting was dictum. On the other hand, the reasoning of Ngoun, which was not dictum, is compellinga gang member who perpetrates a felony by definition also promotes and furthers that same felony. Thus, we do not believe that Castenada required the Ngoun court to come to any different conclusion." (People v. Sanchez, supra, 179 Cal.App.4th at pp. 1306-1307, italics omitted.)
People v. Castenada, supra, 23 Cal.4th 743, does not compel the result reached by the majority.
I would affirm defendant's conviction for violation of section 186.22(a). (Salcido, supra, 149 Cal.App.4th at p. 367.)
NOTES
[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and III through V of the Discussion.
[2] Undesignated statutory references are to the Penal Code.
[3] On the prosecutor's motion, the trial court dismissed a count of assault with a deadly weapon. (§ 245, subd. (a); count II.) The trial court found that defendant had suffered a prior robbery strike conviction (§§ 667, subds. (b)-(i), 1170.12), and had served a prior prison term for a controlled substance conviction. (§ 667.5, subd. (b).)

Defendant was sentenced to state prison for eight years four months, consisting of six years (double the upper term) for the attempted robbery, 16 months (two-thirds the middle term) for the street gang offense, and one year for the prior prison term.
[4] The Attorney General does not challenge the trial court's granting of a new trial on the issue of the gang enhancement. (§ 186.22, subd. (b)(1).)
[5] The Attorney General conceded as much at oral argument.
[6] A gang expert "may not testify that an individual had specific knowledge or possessed a specific intent." (People v. Garcia (2007) 153 Cal.App.4th 1499, 1513 [64 Cal.Rptr.3d 104].)
[*] See footnote, ante, page 722.
[8] As noted, the only visible gang signs on defendant's arms below his T-shirt were on the backs of his triceps. The hypothetical from which Sergeant Sachs opined that the present crime was committed for the benefit of a criminal street gang was premised on the assumption that the T-shirt defendant was wearing during the attack allowed the display of some portion of his gang tattoos. There was no testimony that the victim of the attack saw the tattoos or any gang symbols.
[9] For these reasons the Ngoun court held it a misconstruction of Castenada to limit the language of section 186.22, subdivision (a) to aiders and abettors and suggested that the CALJIC committee revise the instruction. (Ngoun, supra, 88 Cal.App.4th at p. 437.) Subsequently, CALCRIM No. 1400 (rev. ed. Dec. 2008) was amended to add perpetrators to the instruction, to wit: "3. The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang either by: [¶] a. directly and actively committing a felony offense; OR [¶] b. aiding and abetting a felony offense." (Italics added.) However, in so doing CALCRIM No. 1400 blurred the express requirement that the offense involve the concerted action of others who are gang members.
[10] Our dissenting colleague fears the consequences of this construction. He advances an in terrorum example. He says: "the majority would preclude a conviction for active participation in a criminal street gang [(§ 186.22, subd. (a))] where the leader of the Norteños, acting entirely alone, got into his car and drove into Sureno territory, shot and killed several Surenos, and pinned notes to their shirts reading, `Norteños Rule.'" (Conc. & dis. opn., post, at p. 740.)

Our colleague fails to note that section 186.22, subdivision (a) is not the sole gang provision at issue, this conduct would require a penalty enhancement pursuant to section 186.22, subdivision (b)(1) that is far greater than the penalty for violation of subdivision (a), a matter as to which the trial court has granted a new trial.
[11] Elsewhere described as gang members. (Castenada, supra, 23 Cal.4th at p. 753.)
[*] See footnote, ante, page 722.
[1] Undesignated statutory references are to the Penal Code. Subdivisions (a) and (b) of section 186.22 are referred to as section 186.22(a) and 186.22(b).