[No. B219279. Second Dist., Div. Seven. Nov. 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MARQUISE DANIEL CARR, Defendant and Appellant.

**COUNSEL**

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERLUSS, P. J.**—Marquise Daniel Carr appeals from the judgment entered following his conviction by a jury on two counts of first degree murder and one count of being a felon in possession of a firearm. The jury also found true two special circumstances allegations related to the murder counts—that Carr had committed multiple murders and was an active participant in a criminal street gang at the time of the murder. (Pen. Code, § 190.2, subd. (a)(3), (22).)[1] In addition, the jury found true associated criminal street gang and firearm-use enhancement allegations.

Carr contends the prosecutor committed prejudicial error under *Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 85 S.Ct. 1229, 1233] (*Griffin*), which forbids comment by the prosecution on an accused's silence, when she criticized Carr's failure to call an alibi witness in his defense. Carr also argues the special circumstance of murder by an active participant in a criminal street gang was improperly imposed because the People failed to prove Carr knew the gang was engaged in illegal activities. Finally, Carr contends there was insufficient evidence the shootings were gang related. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Crime*

In the late morning of March 17, 2007 Rafael Rivera parked a blue car in front of the home of his girlfriend, Nelli Rodriguez, near the corner of East 31st Street and Stanford Avenue in Los Angeles. He walked to the front door and entered the home. Shortly thereafter, a young African-American man left the house next door, mounted a bicycle and began circling on the bicycle in

---

[1] The People did not seek the death penalty. Statutory references are to the Penal Code.

the street near the car. Rivera, followed by Rodriguez, came out of Rodriguez's home and walked toward the car. Rivera, who carried a large white teddy bear, opened the car door for Rodriguez and placed the bear in the backseat. As he walked around to the driver's side of the car, the young man on the bicycle approached, bumped into the front door of the car and fired numerous rounds at Rivera and Rodriguez. He then rode the bicycle around the corner and south on Stanford Avenue. Rivera and Rodriguez each died of multiple gunshot wounds.

### 2. Carr's Identification and Arrest

Carr was placed at the murder scene by two witnesses, Jose Sanchez and Fredy Vinces. Sanchez, who was 15 years old on the day of the shooting, did not know Carr's name but had seen him before in the neighborhood. Sanchez testified he was standing on the sidewalk outside his apartment and saw Carr riding his bicycle on East 31st Street. Carr was wearing a black T-shirt and black shorts with white stripes. Sanchez returned to his apartment to get something and then came back outside. At this point, he saw Carr riding his bicycle toward Stanford Avenue and heard gunshots. According to Sanchez, Carr was holding a large black handgun shooting at a blue car. After the shooting Sanchez saw Carr ride his bicycle around the corner and go south on Stanford Avenue.

Vinces, who was 13 years old at the time of the shooting, also lived near the intersection of Stanford Avenue and East 31st Street. Between 10 and 20 minutes before the shooting, Vinces saw Carr sitting on a bicycle in the front yard of his house.[2] Vinces testified at trial Carr had been wearing a white shirt. At the preliminary hearing Vinces testified the bicycle was green and black, although at trial he said he did not recall the bicycle's color. Vinces went into the backyard of his house but returned to the street when he heard shots. He saw Rivera lying next to the blue car and recognized Rodriguez lying in the passenger seat of the car.

Officers investigating the shooting discovered black rubber marks on the driver's side door of the blue car, with a green paint-transfer mark in the center. Los Angeles Police Detective Julio Benavides obtained several video-tapes recorded at the time of the shooting from local businesses. One showed Rivera parking his car and walking into Rodriguez's home, walking out with the teddy bear, opening the door for Rodriguez and placing the bear in the backseat and then walking to the driver's side of the car. It also showed a young African-American man circling on his bicycle shortly before the

---

[2] Carr had been staying with his grandmother, who lived next door to Rodriguez and her family. Carr's girlfriend also lived at the same house.

couple emerged, approaching and bumping his bicycle into the car, firing shots into the car and then riding south on Stanford Avenue. Because of his distance from the camera and the poor quality of the recording, the young man was not recognizable. Another videotape showed a young African-American man on a bicycle wearing a white T-shirt and black basketball shorts with a distinct design approach the blue car. A third, recorded an hour before the shooting at a nearby liquor store, showed a young African-American man recognizable as Carr wearing black basketball shorts with a distinctive design and riding a green bicycle. A white T-shirt was hanging around his shoulders. A photograph taken inside the store showed Carr wearing the same distinctive basketball shorts with a white shirt draped over his shoulder. Another showed Carr standing in front of the cash register wearing the same shorts and a white tank top. Based on the video recordings, Benavides prepared a photographic lineup containing a photograph of Carr; and Sanchez identified Carr as the shooter. Carr was arrested in May 2007.[3]

The evidence detailed in the previous paragraphs was admitted at trial. In addition, Detective Benavides played a recording of several telephone calls made by Carr while he was in his holding cell. In calls to his girlfriend and grandmother Carr told them the police had asked him about a green bicycle and ordered them to get rid of "DeJean's bike" and to make sure the police did not find it.

### 3. The Gang Expert Testimony

Los Angeles Police Officer Ronald Berdin testified about gang activity in the area around the shooting. According to Berdin, the shooting occurred within territory claimed by the Rollin' 20 Outlaw Bloods (Rollin' 20's or Rollin' 20 Outlaws), a predominantly African-American gang whose primary activities were robberies, narcotic sales, assaults and murders.[4] Between January 25, 2007 and March 17, 2007, the date of the murders, Berdin twice contacted Carr at the liquor store close to the site of the shooting; and Carr confirmed he was a member of the Rollin' 20's. In one instance, Carr was accompanied by a member of the Rollin' 30 Pirus, another Bloods gang allied with the Rollin' 20's. Berdin took a photograph of the gang tattoo on Carr's right arm, which depicted a crossed-out "ES20" (representing a rival gang known as the Eastside 20's 13, a predominantly Hispanic gang), topped by an

---

[3] Carr was charged with two counts of murder (§ 187, subd. (a)) with special circumstances (§ 190.2, subd. (a)(3), (22)), one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)) and related criminal street gang and firearm-use enhancements (§§ 186.22, subd. (b)(1)(C), 12022.53, subds. (b)–(d)).

[4] As predicate acts to support the criminal street gang allegation, Officer Berdin testified that two Rollin' 20's members, Danny Jones and Timothy Brevard, had been convicted of possession for sale of cocaine within the previous two years.

inscription of "Bloods." Berdin explained the shooting had occurred in a part of Rollin' 20's territory that bordered territory claimed by Eastside 20's 13, and nearby graffiti reflected the gangs' ongoing rivalry. According to Berdin, the Rollin' 20's and Eastside 20's 13 had begun feuding in 2005 when a member of the Rollin' 30's had been killed. Because the Bloods-related gangs believed the killing had been committed by an Eastside 20's 13 member, there had been multiple shootings between the two gangs in the two years preceding the murders of Rivera and Rodriguez.[5] Berdin opined a shooting under circumstances similar to the one in this case would have been committed for the benefit of the Rollin' 20's and to further their criminal activity.

### 4. The Alleged Griffin Error

Carr did not present any evidence on his own behalf. In closing defense counsel argued to the jury that, even if Carr had been riding a bicycle on East 31st Street on the morning of the shooting, there were four or five other young African-American men riding bicycles on the street and the video recordings did not establish which of the bicycle riders committed the murders. Further, at least five African-American men in the vicinity were wearing white T-shirts with black pants. She criticized the police investigation for a failure to investigate other witnesses who might have named someone other than Carr. She added, "Would you fall out of your seats . . . if it was someone other than [Carr] on that tape? Would it be mind-blowing if it were another young male Black in a white T-shirt and dark pants?"

In rebuttal the prosecutor responded to defense counsel's argument by noting all the evidence pointed directly to Carr, including Sanchez's eyewitness identification of Carr on the day of the murders. She argued, "Why would [a detective] need to start calling . . . and interviewing [other witnesses]? That is a waste of time. What you didn't hear from witnesses in this case—you didn't hear from the defense. You didn't hear—the defense did not provide any alibi witnesses. Not one friend . . . ." At this point defense counsel objected that the statements of the prosecutor constituted misconduct and requested a curative instruction. The prosecutor argued she was allowed to comment on the failure to call witnesses other than Carr; but the trial court concluded her comments were improper, explaining: "Sometimes . . . the defense puts on some evidence that suggests an alibi and you're

---

[5] Although there was no evidence at trial Rivera belonged to a particular gang, there was information that may have led Carr to believe Rivera belonged to a Hispanic gang. Rivera had a shaved head, which Officer Berdin testified was typical of Hispanic gang members; his car was modified with what was referred to as Lamborghini-style doors that flip up; and the door of the car bore a painted-over "L.A." insignia that is sometimes associated with Hispanic gangs in Los Angeles. Although Carr could not have seen Rivera's torso, his abdomen was tattooed.

simply commenting on other logical witnesses that should have been and could have been called. Here there is no evidence that there are any alibi witnesses to be called. That's the problem, because it's an indirect comment on the defendant's failure to testify." The court acknowledged the comment had appeared to be "innocent" and "inadvertent," but gave the requested limiting instruction: "Ladies and gentlemen, as I've told you many times throughout this trial, including jury selection, the defense has no obligation to present evidence. The defendant has no obligation to testify in this case. And I'm striking the prosecutor's last comment about the failure to call any alibi witnesses and you're to disregard it in its entirety. It should not even be brought up in your discussions."

### 5. Carr's Conviction and Sentencing

Carr was convicted on all counts charged: Two counts of first degree murder and one count of possession of a firearm by a felon. The jury found true the special circumstances allegations Carr had committed multiple murders and had intentionally killed the victims while he was an active participant in a criminal street gang. The jury also found true the allegations Carr had committed the murders for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)) and had personally used and intentionally discharged a firearm that proximately caused great bodily injury or death (§ 12022.53, subds. (b)–(d)).

The trial court imposed consecutive sentences of life without the possibility of parole plus 25 years to life on counts 1 and 2. The sentence on count 3 was stayed pursuant to section 654. Carr was ordered to pay a restitution fine of $5,000 (§ 1202.4, subd. (b)), a parole revocation fine in the same amount (§ 1202.45), which was suspended, and a $90 court security fee (§ 1465.8, subd. (a)(1)).[6]

---

[6] Since Carr was actually sentenced only to life sentences without the possibility of parole and not to any determinate terms, the parole revocation fine, even though suspended, is unauthorized and must be stricken. (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1097 [83 Cal.Rptr.3d 340]; see *People v. Brasure* (2008) 42 Cal.4th 1037, 1075 [71 Cal.Rptr.3d 675, 175 P.3d 632]; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183–1186 [83 Cal.Rptr.2d 157].)

## DISCUSSION

1. *The Trial Court Cured Any Potential* Griffin *Error in the Prosecutor's Closing Argument*

■ "Under the Fifth Amendment of the federal Constitution, a prosecutor is prohibited from commenting directly or indirectly on an accused's invocation of the constitutional right to silence. Directing a jury's attention to a defendant's failure to testify at trial runs the risk of inviting the jury to consider the defendant's silence as evidence of guilt." (*People v. Lewis* (2001) 25 Cal.4th 610, 670 [106 Cal.Rptr.2d 629, 22 P.3d 392]; see *Griffin, supra,* 380 U.S. at p. 615 ["the Fifth Amendment . . . forbids . . . comment by the prosecution on the accused's silence"].) "Pursuant to *Griffin,* it is error for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf." (*People v. Hughes* (2002) 27 Cal.4th 287, 371 [116 Cal.Rptr.2d 401, 39 P.3d 432].)

The *Griffin* prohibition does not extend, however, to comments based upon the state of the evidence or the failure of the defense to introduce material evidence or call anticipated witnesses. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1229 [14 Cal.Rptr.2d 702, 842 P.2d 1]; see *People v. Hughes, supra,* 27 Cal.4th at p. 394 [fair comment on state of evidence falls outside of *Griffin* prohibition]; *People v. Medina* (1995) 11 Cal.4th 694, 755–756 [47 Cal.Rptr.2d 165, 906 P.2d 2] [comments that addressed defense failure to provide rational explanation for why defendant was armed was a remark on the evidence, not on defendant's silence].) " '[A]s a general principle, prosecutors may allude to the defense's failure to present exculpatory evidence' [citation], and such commentary does not ordinarily violate *Griffin* or erroneously imply that the defendant bears a burden of proof . . . .' " (*People v. Lewis* (2004) 117 Cal.App.4th 246, 257 [12 Cal.Rptr.3d 1]; accord, *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1006 [50 Cal.Rptr.3d 875].) As the Supreme Court has cautioned, *Griffin*'s protection of the right to remain silent is "a 'shield,' not a 'sword' that can be used to 'cut off the prosecution's "fair response" to the evidence or argument of the defendant.' [Citation.] Questions or argument suggesting that the defendant did not have a fair opportunity to explain his innocence can open the door to evidence and comment on his silence." (*Lewis,* at p. 257.)

Carr and the People predictably disagree whether the remarks made by the prosecutor in this case warrant a finding of misconduct. While the People correctly note the prosecutor was responding to the defense's criticism of the police investigation for failure to interview more witnesses, the prosecutor prefaced the observation "the defense did not provide any alibi witnesses"

with the potentially improper statement, "[Y]ou didn't hear from the defense." Although the trial court described the prosecutor's statements as "innocent" and "inadvertent," Carr argues the statements were unduly prejudicial.

Ordinarily, when an ambiguous remark is challenged under *Griffin*, we determine " 'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Prieto* (2003) 30 Cal.4th 226, 260 [133 Cal.Rptr.2d 18, 66 P.3d 1123]; see *People v. Roybal* (1998) 19 Cal.4th 481, 514 [79 Cal.Rptr.2d 487, 966 P.2d 521].) That inquiry, however, is unnecessary here. At the time defense counsel objected to the prosecutor's argument, she requested the court admonish the jury to ignore the statement. The court agreed the statement was potentially misleading and asked defense counsel if she was sure she wanted an admonition. Defense counsel affirmed the request, and the court gave the requested admonition, instructing the jury to ignore the comment and to refrain from discussing it during deliberations. This admonition cured whatever prejudice may have arisen from the prosecutor's argument.[7] (See *Prieto*, at p. 260 ["an admonition would have cured any prejudice from the alleged misconduct"]; *People v. Silva* (2001) 25 Cal.4th 345, 373 [106 Cal.Rptr.2d 93, 21 P.3d 769] [defense decision to decline admonition rendered objection unreviewable]; *People v. Morales* (2001) 25 Cal.4th 34, 47 [104 Cal.Rptr.2d 582, 18 P.3d 11] [presuming " 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade' "].)[8]

### 2. *The Criminal Street Gang Special Circumstance and Enhancement Were Properly Imposed*

Carr's alleged involvement with the Rollin' 20's criminal street gang was the basis for two special allegations: First, as to each murder count, he was charged with a special circumstance under section 190.2, subdivision (a)(22), which authorizes a defendant to be sentenced to "death or imprisonment in the state prison for life without the possibility of parole" if "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of

---

[7] Although we acknowledge the possibility a prosecutor's comments could be sufficiently egregious to warrant a mistrial, this is not one of those extraordinary situations.

[8] Because the prosecutor did not refer to any out-of-court remarks in her argument, we need not address Carr's additional claim her comments violated his Sixth Amendment right to confront and cross-examine the witnesses against him. (See *People v. Harris* (1989) 47 Cal.3d 1047, 1083–1084 [255 Cal.Rptr. 352, 767 P.2d 619].)

Section 186.22,[9] and the murder was carried out to further the activities of the criminal street gang." Carr was also charged with a sentencing enhancement under section 186.22, subdivision (b)(1), which requires proof the underlying felony was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." The jury was instructed with CALCRIM No. 736 on the special circumstance allegations and with CALCRIM No. 1401 on the section 186.22, subdivision (b)(1), allegation. It found both special allegations to be true.

With respect to the special circumstance allegations, Carr contends there was no evidence at trial he "knew that members of a gang engaged in or have engaged in a pattern of criminal gang activity," as required by CALCRIM No. 736.[10] He also argues there was insufficient evidence to support the jury's finding the shootings were gang related within the meaning of section 186.22, subdivision (b)(1). The People contend a defendant's subjective knowledge of the criminal activity of other members of the gang is not a required showing under section 190.2, subdivision (a)(22). According to the People, Carr's knowledge of the gang's criminal activities can be inferred from the evidence adduced at trial, and substantial evidence supported the allegation the shootings were gang related.

> a. *Imposition of the special circumstance under section 190.2, subdivision (a)(22), requires proof of the defendant's knowledge of a gang's criminal activities*

Section 190.2, subdivision (a)(22), was enacted as part of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, an initiative measure adopted by the electorate in March 2000. (See *People v. Shabazz* (2006) 38 Cal.4th 55, 64 [40 Cal.Rptr.3d 750, 130 P.3d 519].) Statements contained in Proposition 21 reflect its intent: " 'Gang-related crimes pose a unique threat to the public because of gang members' organization and solidarity. Gang-related felonies should result in severe penalties. *Life without the possibility of parole or death should be available for murderers who kill*

---

[9] Section 186.22, subdivision (f), defines a criminal street gang as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or subdivision (31) to (33), inclusive, of (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

[10] Carr asserts that reversal of the gang special circumstance would require reduction of his sentence on count 1 to life with the possibility of parole. On count 2, however, the jury also found true the multiple victims special circumstance under section 190.2, subdivision (a)(3). This latter special circumstance, which Carr does not challenge, independently supports his sentence of life without the possibility of parole.

*as part of any gang-related activity.'* " (*Shabazz*, at p. 65, quoting Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (h), p. 119.)

CALCRIM No. 736, as given by the court in this case, provides: "The defendant is also charged with a special circumstance of committing murder while an active participant in a criminal street gang, in violation of Penal Code section 190.2, subdivision (a)(22). To prove that this special circumstance is true, the People must prove that, one, the defendant intentionally killed Rafael Rivera, count one, and/or Nelli Rodriguez, count two; two, at the time of the killing, the defendant was an active participant in a criminal street gang; *three, the defendant knew that members of a gang engaged in or have engaged in a pattern of criminal gang activity*; and four, the murder was carried out to further the activities of the criminal street gang. 'Active participation' means involvement in a criminal street gang that is more than in passing or in name only. The People do not have to prove that the defendant devoted all or a substantial part of his time or efforts to the gang, or that he was an actual member of the gang. . . ." (Italics added.)

Notwithstanding the language in CALCRIM No. 736 that we have italicized, on its face section 190.2, subdivision (a)(22), does not expressly impose a knowledge requirement. Instead, the wording of this provision requires only that the People prove Carr was an active participant in a criminal street gang when he murdered Rivera and Rodriguez and that the murders were carried out to further the activities of the gang. Although the comment to CALCRIM No. 736 does not indicate why the drafters included an express knowledge requirement as an element of the section 190.2, subdivision (a)(22), special circumstance, CALJIC No. 8.81.22, which addresses the same special circumstance, similarly recites an express knowledge requirement. According to the CALJIC commentary, "Criminal liability under Penal Code § 186.22 requires that a defendant have knowledge that the criminal street gang's members engage in a pattern of criminal conduct. (*People v. Green*, 227 Cal.App.3d 692 [278 Cal.Rptr. 140] (1st Dist. 1991).) [¶] In *People v. Robles*, 23 Cal.4th 1106 [99 Cal.Rptr.2d 120, 5 P.3d 176] (2000), the phrase, 'active participant in a criminal street gang, as defined in subdivision (a) of section 186.22' was construed to mean that the elements of that crime were incorporated in Penal Code § 12031(a)(2)(C). *Since that same language is found in Penal Code § 190.2(a)(22), the committee has included the pertinent elements of that section into its definition of the essential elements of this special circumstance allegation.*" (Com. to CALJIC No. 8.81.22 (Spring ed. 2008) p. 481, italics added.)

The CALJIC No. 8.81.22 comment is incorrect. Unlike section 12031, subdivision (a)(2)(C), at issue in *People v. Robles* (2000) 23 Cal.4th 1106 [99

Cal.Rptr.2d 120, 5 P.3d 176],[11] section 190.2, subdivision (a)(22), does not incorporate subdivision (a) of section 186.22, which defines the substantive criminal offense of active gang participation; instead, it incorporates subdivision (f) of section 186.22, the subdivision that defines the term "criminal street gang." Thus, *Robles* provides no guidance for the interpretation of section 190.2, subdivision (a)(22). Indeed, the decisive point in the *Robles* decision was the Legislature's reference to subdivision (a), rather than subdivision (f), of section 186.22; and the court refused to accept the People's suggestion this was simply a drafting error by the Legislature. (*Robles*, at pp. 1113–1114.) Based purely on the statutory language, therefore, the People need not separately prove a defendant's subjective knowledge of the criminal activities of his or her fellow gang members to establish the section 190.2, subdivision (a)(22), special circumstance.[12]

■ Although Carr's statutory argument fails, there is a constitutional requirement that, before a defendant can be penalized for being an active participant in a criminal organization—as section 190.2, subdivision (a)(22), undoubtedly does—the defendant must be shown to have had knowledge of the gang's criminal purposes. As the Supreme Court explained in *People v. Castenada, supra,* 23 Cal.4th 743, another case construing section 186.22, subdivision (a), "[u]nder *Scales* [*v. United States* (1961) 367 U.S. 203 [6 L.Ed.2d 782, 81 S.Ct. 1469]], the due process requirement that criminal liability rest on personal guilt means simply that a person convicted for active membership in a criminal organization must entertain 'guilty knowledge and intent' of the organization's criminal purposes. [Citation.] When our Legislature enacted section 186.22(a), which is at issue here, it was fully cognizant of the guilty knowledge and intent requirements the high court had articulated in *Scales.* [Citation.] This explains why the Legislature expressly required in section 186.22(a) that a defendant not only 'actively participates' in a criminal street gang (the phrase at issue here), but also that the defendant

---

[11] Section 12031, subdivision (a)(2)(C), elevates the crime of carrying a loaded firearm to a felony when the defendant is "an active participant in a criminal street gang, *as defined in subdivision (a) of Section 186.22* . . . ." (Italics added.)

[12] For similar reasons, Carr's reliance on the recent Third District opinion in *People v. Rodriguez* (2010) 188 Cal.App.4th 722 [115 Cal.Rptr.3d 779] is misplaced. There, the Court of Appeal considered the phrase "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" contained in section 186.22, subdivision (a), and concluded an active participant in a criminal gang, acting alone in a particular crime, cannot be charged under that subdivision. (*Rodriguez,* at pp. 726, 737; see *People v. Castenada* (2000) 23 Cal.4th 743, 749 [97 Cal.Rptr.2d 906, 3 P.3d 278] ["section 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity"].) The language that concerned the *Rodriguez* court, however, does not appear in section 190.2, subdivision (a)(22), which instead requires only that the qualifying murder be "carried out to further the activities of the criminal street gang." Thus, there is no bar to imposition of a special circumstance under this subdivision on a gang murderer acting alone.

does so with 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and that the defendant 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' " (*Castenada*, at p. 749.) Although the court concluded section 186.22, subdivision (a), exceeded the requirements of " 'the active membership test in *Scales*' " (*Castenada*, at p. 750) because it also requires a finding a gang member aided and abetted a specific criminal offense committed by another gang member, the principle is clear: Criminal punishment based on active participation in a criminal gang requires knowledge of the gang's illegal purposes. Thus, CALCRIM No. 736's inclusion of a knowledge element is not legally incorrect even if the statute itself does not expressly require its inclusion.[13]

This additional element, however, is probably superfluous. Section 190.2, subdivision (a)(22), further requires the People prove "the murder was carried out to further the activities of the criminal street gang." This language substantially parallels the language of section 186.22, subdivision (b)(1), which authorizes a sentencing enhancement for felonies "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." As shown below, the evidence at trial was sufficient to establish Carr knew of the Rollin' 20's criminal activities and the shootings were intended to benefit a criminal street gang.

   b.   *Substantial evidence supports both the gang special circumstance and the criminal street gang enhancement*

■   As confusing as the multiple distinctions described above may appear to be, juries have not likely been misled by them for the simple reason the evidence that allows a jury to find a felony was committed for the benefit of a gang within the meaning of section 186.22, subdivision (b)(1), also typically supports a finding the defendant knew of the criminal activities of the gang. The Supreme Court has observed, "the facts from which a mental state may be inferred must not be confused with the mental state that the prosecution is required to prove. Direct evidence of the mental state of the accused is rarely available except through his or her testimony. The trier of fact is and must be free to disbelieve the testimony and to infer that the truth is otherwise when such an inference is supported by circumstantial evidence regarding the

---

[13] As did the Supreme Court in *Castenada*, we construe the phrase "the defendant knew that members of a gang engaged in or have engaged in a pattern of criminal gang activity" (CALCRIM No. 736) to correlate to the active membership test described in *Scales*, that is, " 'guilty knowledge and intent' of the organization's criminal purposes" (*People v. Castenada, supra*, 23 Cal.4th at p. 749, quoting *Scales v. United States, supra*, 367 U.S. at p. 228), and does not require a defendant's subjective knowledge of particular crimes committed by gang members, as urged by Carr.

actions of the accused." (*People v. Beeman* (1984) 35 Cal.3d 547, 558–559 [199 Cal.Rptr. 60, 674 P.2d 1318].) In other words, just as a jury may rely on evidence about a defendant's personal conduct, as well as expert testimony about gang culture and habits, to make findings concerning a defendant's active participation in a gang or a pattern of gang activity,[14] it may also rely on the same evidence to infer a defendant's knowledge of those activities. (See, e.g., *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930 [5 Cal.Rptr.3d 640] [expert testimony drug offense was gang related plus evidence defendant received permission from a gang to sell illegal drugs at a mall and admission of gang membership constituted sufficient circumstantial evidence defendant intended to benefit gang].)

In this case Carr twice admitted his Rollin' 20's gang membership to Officer Berdin in the months leading up to the murders, had been contacted by police in the company of another member of a Bloods-related gang and wore a tattoo proclaiming the Bloods over the Eastside 20's 13. As Berdin testified, there was an ongoing feud between the Eastside 20's 13 and the Rollin' 20's—reflected in local graffiti—that had resulted in several shootings since 2005. The two gangs claimed adjoining territory, and the murders occurred in Rollin' 20's territory not far from Eastside 20's 13 territory. Moreover, in addition to the murders of Rivera and Rodriguez and Carr's previous conviction of possession of cocaine base for sale, Berdin testified two other Rollin' 20's gang members had been convicted of qualifying felonies within the previous two years. Properly asked to opine whether a hypothetical murder committed under similar circumstances would have been intended to benefit the Rollin' 20's gang, Berdin answered it would have.

In short, there was ample evidence of Carr's gang affiliation, qualifying felony convictions by him as well as other gang members, continuing conflict between his gang and the Eastside 20's 13 gang and expert testimony about the culture and violent behavior of criminal street gangs, including the Rollin' 20's. (See *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1384 [37 Cal.Rptr.2d 596] [affirming use of expert testimony to establish gang enhancement: "It is difficult to imagine a clearer need for expert explication than that presented by a subculture in which this type of mindless retaliation promotes 're-spect.' "].) This evidence was more than sufficient for the jury to infer Carr

---

[14] See, e.g., *People v. Castenada, supra,* 23 Cal.4th at page 753 ("evidence of the crimes defendant here committed, his many contacts on previous occasions with the Goldenwest criminal street gang, and his admissions by bragging to police officers on those occasions of gang association or membership" proved the defendant's active participation); *People v. Schoppe-Rico* (2006) 140 Cal.App.4th 1370, 1378, footnote 8 [44 Cal.Rptr.3d 896] (defendant's admissions of gang membership; his verbal altercation with men wearing the color of a rival gang and then firing of a gun; his gang tattoos and gang graffiti; photographs of defendant with gang members found in his bedroom; and testimony of gang expert regarding nature, culture and violent behavior of gang supported allegation of active gang participation).

knew about the criminal activities of the Rollin' 20's gang and that the murders were committed for the benefit of the gang.

## DISPOSITION

The parole revocation fine imposed pursuant to section 1202.45 is stricken. As modified, the judgment is affirmed. The superior court is directed to prepare a corrected abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

Woods, J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 2, 2011, S189234.