Filed 4/12/13  P. v. Price CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KESHAWN LYNELL PRICE,<br><br>    Defendant and Appellant. | D061072<br><br><br><br>(Super. Ct. No. SCD233965) |

APPEAL from a judgment of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

A jury convicted Keshawn Lynell Price of carrying a loaded firearm (Pen. Code,[1] § 12031,[2] subd. (a)(1)).  In addition, the jury found true the enhancement allegations that Price was not the registered owner of the firearm under section 12031, subdivision

---

[1]    All further statutory references are to the Penal Code.

[2]    Section 12031 was repealed on January 1, 2012, but its provisions were continued without substantive change in new Title 2 (commencing with § 12001), entitled Sentence Enhancements.  We thus refer to this section by its former number in this opinion for clarity and convenience.

(a)(2)(F), and that he was an active participant in a criminal street gang within the meaning of section 12031, subdivision (a)(2)(C).

The court sentenced Price in the present case along with another unrelated case, No. SCD233723. The court chose case No. SCD233723 to constitute the principal term, imposed the middle term of three years, and increased the term to five years to reflect the street gang enhancement. In the present case, the court imposed one-third the middle term of two years (eight months) to run consecutively with the principal term for a total of five years eight months.

Price appeals the jury's findings regarding his active participation in a criminal street gang, contending there was insufficient evidence to show he had knowledge that members of Skyline Piru (Skyline) and O'Farrell Park (O'Farrell) engaged in a pattern of criminal activity. Additionally, Price appeals his conviction of carrying a loaded firearm, contending there was insufficient evidence that he carried the gun. We conclude there was sufficient evidence of Price's knowledge that Skyline and O'Farrell engaged in a pattern of criminal activity and that he carried the gun on the night in question. Accordingly, we affirm the judgment.

FACTS

I

*EVIDENCE OF THE CARRYING OF A LOADED FIREARM*

On October 24, 2010, San Diego Police Officers Tobia Terranova and Kevin Wadhams attempted to stop a car on Euclid Avenue in San Diego. The driver of the car refused to stop and a high-speed chase ensued. During the pursuit, the officers saw the

2

front passenger's arm come out of the right front passenger window and throw a metal object that caused large orange sparks when it hit the ground. The pursuit ended in a cul-de-sac and both occupants of the car jumped out and ran in different directions. The driver was apprehended and identified as Jamar Lee. Price, identified as the passenger of the car, was apprehended shortly thereafter. DNA mouth swabs were taken from both Price and Lee.

Later, Officer Kris Walb searched the area where the object was thrown. At the base of a tree she found a .38-caliber revolver, loaded with five rounds. At trial, Officer Terranova stated he had seen photographs of the revolver found at the scene. He stated the photographs of the revolver matched the size, shape and general make-up of the object that was thrown and sparked on the sidewalk.

The revolver was also swabbed for a DNA sample. The technical manager at the DNA laboratory for the San Diego Police Department tested the swab of DNA from the revolver and compared the sample with the samples taken from Price and Lee. The technical manager obtained a mixture of DNA from at least three people from the swab of the revolver. Price was included as a potential DNA contributor to the DNA swab taken from the revolver, whereas Lee was excluded as a potential DNA contributor.

II

*EVIDENCE OF PRICE'S GANG AFFILIATION*

Detective Jon Brown testified at trial as a gang expert regarding the Skyline and O'Farrell gangs. He stated that gang members earn respect in a gang by committing crimes for the gang. Detective Brown testified about three predicate offenses committed

3

by Skyline or O'Farrell gang members since 2007. The first was the murder of a rival gang member by Skyline and O'Farrell gang members in 2007. The second was an attempted murder by Skyline gang members in 2009. The third was a robbery at gunpoint committed by Skyline and O'Farrell gang members in 2009.

Detective Brown identified Lee as a gang member and stated Lee has five documented associations with Skyline gang members. Lee has a gang moniker and has claimed to Detective Brown that he was a Skyline gang member. Detective Brown has also found photographs of Lee with other known gang members using gang hand signs. Lee and Price are often seen together.

Detective Brown also testified regarding Price's documented gang affiliations. An informant first identified Price as a gang member in 2008. Price has two gang monikers, a gang tattoo and has admitted his gang affiliations to police. Price's father, Keith Price, has also been identified by police as a Skyline gang member.

Further, between 2008 and 2011, Price had 18 contacts with known Skyline or O'Farrell gang members. In 2009, Price was contacted while in a car during a traffic stop with Laquan Jordan (Laquan), a documented Skyline gang member. Price was also contacted during a traffic stop in 2010 with Laquan's brother, Shaquille Jordan (Shaquille). Shaquille has been identified as another Skyline gang member. Laquan and Shaquille are both currently serving prison terms for murder, and Laquan has a child with Price's sister. In addition, in 2010, Price was contacted with a known O'Farrell gang member, Malcolm Hune, as well as Timothy Walker, a known Skyline gang member.

4

At trial, Detective Brown was asked whether gang members would know of the presence of a gun in the car when driving with other gang members in rival territory. He responded that the presence of the gun would be known by other gang members in the car in case they were stopped by police or in order to use it against rival gang members. He also stated the gun would be considered the property of every member of the gang to be used to commit violent crimes.

DISCUSSION

I

*KNOWLEDGE OF A PATTERN OF CRIMINAL ACTIVITY*

Price contends the jury's finding that he was an active participant in a criminal street gang must be reversed because there was insufficient evidence for a rational jury to find he had knowledge that members of the Skyline or O'Farrell gangs engage or have engaged in a pattern of criminal activity.

When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record favorably to the judgment to determine whether it contains substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).) When reviewing the sufficiency of evidence to support a special circumstance, the relevant inquiry is " ' "whether, after viewing the evidence in the light most favorable to the People, *any* rational trier of fact could have found the essential elements of the allegation beyond a reasonable doubt." ' " (*Ibid.*)

The California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.) provides that a person is guilty of a substantive offense when he or she "actively participates in [a] criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang . . . ." (§ 186.22, subd. (a).) Knowledge that fellow gang members engage in or have engaged in a pattern of criminal activity requires " 'guilty knowledge and intent' of the organization's criminal purposes." (*People v. Castenada* (2000) 23 Cal.4th 743, 749, citing *Scales v. United States* (1961) 367 U.S. 203, 228.) It does not require that a defendant have subjective knowledge of particular crimes committed by gang members. (*People v. Carr* (2010) 190 Cal.App.4th 475, 488, fn. 13.) Evidence of a defendant's gang affiliation, qualifying felony convictions by him or other gang members, continuing conflicts between gangs and expert testimony is sufficient for a jury to infer the defendant knew about the criminal activities of his affiliated gang. (*Ibid*.)

Here, there was sufficient evidence for a rational trier of fact to find Price had knowledge that members of Skyline or O'Farrell engage or have engaged in a pattern of criminal activity. Detective Brown provided ample evidence of Price's involvement and association with both gangs, permitting the jury to infer his intimate knowledge of the gang and, in turn, its criminal activities. Such testimony included three predicate offenses committed by Skyline and O'Farrell gang members since 2007. Detective Brown's testimony also provided evidence of Price's self-identification to police as a gang

6

member, his gang moniker, gang tattoos, and his associations with Lee and Laquan, both documented gang members.

Further, the jury could reasonably have inferred Price's intimate knowledge of the Skyline gang's criminal purposes from his familial associations with various gang members. Price's father has been identified as a Skyline gang member, and Price's sister has a child with Laquan, a documented gang member currently serving a prison term for murder. Price's numerous contacts while in the presence of various Skyline and O'Farrell gang members also show a close association with the gang, giving the jury substantial evidence from which to infer his knowledge of the gang's activities.

## II

### *PRICE'S CARRYING OF THE LOADED GUN*

Price also contends his conviction for carrying a loaded firearm must be reversed because there was insufficient evidence to establish he carried a gun within the meaning of section 12031, subdivision (a)(1). As noted above, we review this contention for substantial evidence. (*Lindberg*, *supra*, 45 Cal.4th at p. 27.)

Under section 12031, "[a] person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place . . . ." (§ 12031, subd. (a)(1).) " '[C]arrying' refers to the 'act or instance of carrying' and the verb 'carry' in relevant definition connotes 'to convey, or transport . . . ;' and 'to transfer from one place . . . to another.' " (*People v. Overturf* (1976) 64 Cal.App.3d Supp. 1, 7.)

Here, the gun was thrown from the front passenger window where Price was seated during the pursuit. When the gun was retrieved, it was loaded with five rounds. When the DNA swabs were tested, Price's DNA was found on the gun, while Lee's was not. In addition, Price himself concedes the evidence produced at trial showed "he may have briefly touched the gun to throw it out the window." We conclude the evidence was sufficient for a rational juror to infer Price carried the gun within the meaning of section 12031, subdivision (a)(1).

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

8