Filed 4/16/15  P. v. Martinez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL RUBEN MARTINEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B253878<br>(Super. Ct. No. KA102283)<br>(Los Angeles County) |

Michael Ruben Martinez appeals after a jury convicted him of driving under the influence (DUI) within 10 years of three prior DUI violations (Veh. Code,**1** § 23550) and driving with a suspended license (§ 14601.5).  The jury also found true the allegation that appellant refused to take a chemical test to determine his blood alcohol level (§ 23578).  Appellant admitted serving four prior prison terms (Pen. Code, § 667.5, subd. (b)).  The trial court sentenced him to six years in state prison.  Appellant raises claims of prosecutorial misconduct, evidentiary error, and insufficient evidence.  We affirm.

STATEMENT OF FACTS

Paul Badell and Kaitlin Raley were driving in Pomona one night when another driver ran a red light and "cut [them] off[.]" The other driver, whom Badell and Raley later identified as appellant, ran another red light and "swerved" into a gas station.

---

**1** Unless otherwise noted, all further statutory references are to the Vehicle Code.

As Raley called 911 to report the incident, Badell pulled into the gas station and parked near appellant's vehicle. A few minutes later, Badell and Riley saw appellant get out of his vehicle and "stumble[]" into the gas station's convenience store. No one else was in appellant's vehicle.

When the police arrived several minutes later, appellant was "stumbling" out of the store with his keys in his hand. The police stopped appellant as he was opening the driver's side door of his vehicle. He exhibited signs of intoxication and refused to submit to a blood or breath test. He claimed a friend had been driving but was unable to provide a name. A computer check revealed his license was suspended. He was arrested and taken into custody.

Appellant's fiancée, Jennifer Rojo, testified in his defense. Rojo said she was driving that night because appellant had been drinking. Appellant fell asleep in the back seat. As Rojo was driving to their home in Alhambra, appellant woke up and began arguing with her. She stopped at the gas station because appellant had to use the restroom. After appellant went into the store, she threw the car keys into a field. She walked away and called her mother, who picked her up about a mile away.

Rojo admitted on cross-examination that she never told the police she had been driving that night. On rebuttal, a defense investigator testified that Rojo never mentioned throwing the keys or driving erratically that night.

DISCUSSION

*Alleged Prosecutorial Misconduct*

Appellant contends the prosecutor committed misconduct by (1) vouching for witnesses; (2) referring to facts not in evidence; (3) appealing to the jury's passion and prejudice and expressing a personal belief in appellant's guilt; (4) misstating facts; (5) commenting on appellant's right to counsel and disparaging defense counsel; and (6) "using post-arrest silence to impeach." We are not persuaded.

"A prosecutor commits misconduct when his conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact."

2

(*People v. Avila* (2009) 46 Cal.4th 680, 711.) Claims of prosecutorial misconduct are forfeited "unless in a timely fashion-and on the same ground-the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 (*Samayoa*).)

All but a few of appellant's claims are forfeited due to his failure to object. (*Samayoa, supra*, 15 Cal.4th at p. 842.) He asserts that objections would have been futile (see, e.g., *People v. Hill* (1998) 17 Cal.4th 800, 821), yet offers no support for such a conclusion.[2] In any event, all of his claims fail on the merits.

*Improper Vouching*

Appellant asserts "the prosecutor made comments vouching for the credibility of the state's witnesses no less than fifteen times," but only two such objections were raised. The first was made during opening arguments after the prosecutor characterized Badell and Raley as "two responsible young people[.]" The court sustained the objection and admonished the jury, "you are the exclusive judges of the credibility of the case, and counsel cannot vouch or comment . . . that they believe or what their characterization of a person's truthfulness [*sic*]." The second objection came during closing arguments after the prosecutor referred to Badell and Raley as "good young people." Although the court did not expressly rule on the objection, it once again

_____

[2] Appellant alternatively offers that "claims [of prosecutorial misconduct] may be considered absent an objection and request for admonition if . . . '"the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict."'" (*People v. Lambert* (1975) 52 Cal.App.3d 905, 908, quoting *People v. Perry* (1972) 7 Cal.3d 756, 790, and *People v. Berryman* (1936) 6 Cal.2d 331, 337.) The cases stating this rule, however, have long since been overruled on this point. (*People v. Green* (1980) 27 Cal.3d 1, 28-34, overruled on other grounds as noted in *People v. Dominguez* (2006) 39 Cal.4th 1141, 1155, fn. 8.)

Appellant also notes that the failure to object in this context can give rise to a claim of ineffective assistance of counsel (see *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126), yet he never actually raises such a claim. Accordingly, any claim of ineffective assistance is also forfeited. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214, fn. 11; *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448.) Because appellant fails to demonstrate prejudicial error, a claim of ineffective assistance would in any event fail. (*People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14 (*Thompson*).) Moreover, "a defendant cannot automatically transform a forfeited claim into a cognizable one merely by asserting ineffective assistance of counsel. [Citation.]" (*Ibid.*)

3

admonished the jury that "you determine the credibility of witnesses in this matter." These admonitions cured any prejudice that may have arisen from the prosecutor's comments. (*People v. Carr* (2010) 190 Cal.App.4th 475, 484 (*Carr*).)[3]

The remaining claims of improper vouching are forfeited and in any event lack merit. "Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record." (*People v. Medina* (1995) 11 Cal.4th 694, 757.) In his opening statement, the prosecutor expressly stated, "[t]he evidence is going to show" that Badell and Raley had acted as responsible citizens. In his closing argument, he referred to the "[u]ncontroverted evidence" supporting this conclusion. Appellant fails to identify a single instance when the prosecutor urged the jury to find Badell and Raley credible based on anything other than the evidence presented at trial and the reasonable inferences to be drawn therefrom. The prosecutor's arguments were also proper to the extent they suggested the jurors should rely on their common sense and experience in evaluating the witnesses' credibility. (CALCRIM No. 226.)

Appellant also misconstrues the prosecutor's attacks on Rojo's credibility as improper vouching for the credibility of Badell and Raley. "'The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence . . . [and] to argue on the basis of inference from the evidence that a defense is fabricated . . . .'" (*People v. Boyette* (2002) 29 Cal.4th 381, 433 (*Boyette*).) The prosecutor properly argued, based on the evidence, that Rojo had a motive to lie while Badell and Raley had no reason but to tell the truth. It was also proper to urge the jury to infer that Rojo had changed her story to comport with Badell and Raley's testimony, notwithstanding Rojo's self-serving claim that she had no knowledge of that testimony.

---

[3] Appellant notes that he also raised an "argumentative" objection during opening statements after the prosecutor stated, "[t]he People are going to present sufficient evidence that these people were acting in accordance with duties as concerned citizens." That objection, however, was insufficient to preserve a claim of improper vouching. (*People v. Avila* (2006) 38 Cal.4th 491, 609.)

4

*Referring to Facts Not in Evidence*

Both of appellant's claims that the prosecutor referred to facts not in evidence, aside from being forfeited, are based on a tortured interpretation of the record. First, appellant construes the prosecutor's affirmative attempts to prevent the disclosure of or speculation as to the reason for appellant's license suspension, i.e., a prior conviction for drunk driving, as a ploy of reverse psychology intended to induce the jury's speculation.**4** Suffice to say that we are not persuaded these comments led the jury to speculate. (See *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 839 (*Szadziewicz*) ["When an appellant bases a prosecutorial misconduct claim on the prosecutor's arguments to the jury, we consider how a reasonable juror would or could have understood the statement in the context of the entire argument"].)

Appellant next takes issue with the prosecutor's comments regarding a "missing" videotape from the gas station's surveillance cameras. Appellant's attorney faulted the police for failing to obtain the tape, which was apparently lost or destroyed when the surveillance system subsequently "crashed." Counsel argued, "If we had the video, we wouldn't be sitting here. That video would have shown us clearly based on what the testimony was, who was driving, who got out of that car." The prosecutor responded, "Are you kidding me? How many times have we seen on TV somebody on tape committing a crime? Do the people say, 'I guess you got me'? No. There's other things. The tape didn't capture everything. Or they can contrive another lie to refute the evidence that is there on the tape."

According to appellant, these comments suggested the tape would have shown appellant was driving. No reasonable juror would have interpreted the remarks to

_____

**4** At appellant's request, the DMV document offered to prove his license had been suspended was redacted to eliminate any reference to the prior conviction. When questioning the officer who ran the computer check of appellant's license, the prosecutor urged the officer to refrain from disclosing the prior conviction to the jury. In referring to the DMV document during closing argument, the prosecutor told the jury: "You're going to have this form. It's a DMV form. And, by the way, there's parts that have been redacted. Don't try to hold it up to the light and read the redacted part. It's redacted for a reason. Stuff is blacked out. [¶] You are not to consider, why is it blacked out? What are they trying to hide from me?"

5

convey such an implication. The prosecutor did not assert or imply he had actually seen the tape. Moreover, his comments were a fair and proper response to defense counsel's assertion that there would have been no trial if the tape had been produced.

*Appealing to the Jury's Passion and Prejudice;*

*Personal Opinion on Appellant's Guilt*

Appellant contends that "[s]everal times throughout the trial the prosecutor subtly, but unequivocally, appealed to the jurors' passion and prejudice—often by expressing his personal opinion and inducing the jury to convict. Most egregious were his references to his personal belief in [appellant's] guilt." He offers the following comments as evidence of this misconduct:

"It's very straightforward, and we know that when you have heard all this evidence, you will do your duty and find the defendant guilty of these charges."

"Contrary to what you hear on TV, in everyday life and everyday cases, jurors do the right thing. You may have heard what happened in Brentwood a long time ago or other things you disagree with, but over the daily course of process, jurors use that collective wisdom, do the right thing, and we know you will too."

"I don't know how good of a defense it is, because, quite frankly, people who are inconsiderate and selfish drive under the influence. It's an inconsiderate and selfish thing to do. It's consistent with that kind of personality."

"We're going to ask you to give him one more thing he deserves. That's a conviction. He's earned it."

"Normally, DUI cases, you have to kind of infer that this person is driving under the influence. . . . But in this case, I don't think there's much inference to be drawn here. . . . We know this man was driving under the influence."

Appellant also faults the prosecutor for eliciting Raley's testimony that she called the police because "it was only a matter of time until somebody got injured or killed." Finally, he reiterates his claim that it was improper for the prosecutor to assert that Rojo was lying.

6

It is improper for the prosecutor to appeal to the jury's passion and prejudice. (*People v. Simington* (1993) 19 Cal.App.4th 1374, 1378.) It is also improper for the prosecutor to express a personal opinion on the defendant's guilt "where there is substantial danger that jurors will interpret this as being based on information at the prosecutor's command, other than evidence adduced at trial." (*People v. Thomas* (2011) 51 Cal.4th 449, 487.) Appellant did not raise a single objection alleging either form of misconduct, so his claims are forfeited. In any event, none of the referenced remarks was improper. When the statements are considered in context, it is clear the prosecutor was either properly responding to defense arguments or properly urging the jury to find appellant guilty based on the evidence at trial. Appellant complains that the prosecutor referred to the O.J. Simpson trial, yet fails to explain how this was improper within the given context. Not once did the prosecutor suggest or imply that his belief in appellant's guilt was based on personal knowledge to which the jury was not privy. (See *People v. Gurule* (2002) 28 Cal.4th 557, 658 [prosecutor's statement of personal belief in defendant's guilt not erroneous because there was no suggestion his belief was based on independent investigation or evidence not before the jury].) We also reject appellant's assertion that the prosecutor's comments about other DUI cases were "likely to resonate with and inflame a jury that had life experiences relating to DUIs." Moreover, there was nothing improper in asking Raley why she called the police. The prosecutor is not responsible for her purportedly offensive answer, which was allowed to stand without objection. Simply put, no reasonable juror would have construed any of the referenced remarks in a manner that would support a finding of prosecutorial misconduct. (*Szadziewicz, supra*, 161 Cal.App.4th at p. 839.)

*Misstating the Evidence*

Appellant claims the prosecutor committed misconduct during closing argument by misstating the evidence regarding Rojo's testimony. He takes issue with the prosecutor's comment that Rojo "had to make up another lie" after Badell and Raley offered testimony that conflicted with her version of the events. Defense counsel objected that the prosecutor was misstating Rojo's testimony and added, "She testified

that she didn't know what the other witnesses said." The court then told the jury, "You are the determiners of what the facts are in this case. You determine what the facts are and whether it's a misstatement or improper inference or proper inference from the known fact."

"Although prosecutors have wide latitude to draw inferences from the evidence presented at trial, mischaracterizing the evidence is misconduct." (*People v. Hill, supra,* 17 Cal.4th at p. 823.) Even assuming that the prosecutor's remark amounted to this form of misconduct, the court's admonishment was sufficient to cure the error. (*Carr, supra*, 190 Cal.App.4th at p. 484.) In any event, the prosecutor did not misstate Rojo's testimony, but rather argued that she was lying. This was proper. (*Boyette, supra*, 29 Cal.4th at p. 433.)

*Commenting on Appellant's Right to Counsel and Disparaging Defense Counsel*

Appellant asserts that "[t]he prosecutor took several opportunities to comment on [appellant's] . . . right to an attorney during trial, and to give his opinion on the quality of that representation." This assertion is both forfeited and specious.

First, appellant offers no case law for the proposition that a prosecutor commits misconduct by referring to the fact a defendant has the right to counsel. Although it is improper for a prosecutor to disparage defense counsel (see *People v. Gionis, supra,* 9 Cal.4th at p. 1215), appellant fails to demonstrate that defense counsel was denigrated here. He interprets as "sarcasm" the prosecutor's remarks that appellant had a "good lawyer," but the record does not support that interpretation. He also complains that the prosecutor (1) "mocked" defense counsel's "my-client's-a-jerk defense," and (2) "implied that defense counsel was being deceptive" in telling the jury it could render a verdict without finding that someone was lying. These complaints confuse denigrating *counsel* with denigrating counsel's *tactics*. The prosecutor did the latter, and properly so. (*People v. Bemore* (2000) 22 Cal.4th 809, 846 ["[T]he prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account"].)

*Commenting on Appellant's Right to Remain Silent*

8

Appellant claims the prosecutor committed *Doyle*[5] error by improperly commenting on his invocation of the right to remain silent. In support of this claim, he offers that the prosecutor argued that appellant's failure to identify Rojo as the driver of the car demonstrated he was lying. He contends: "To the extent that the prosecutor referred to [appellant's] silence before arrest this was permissible. However, this was prejudicial misconduct to the extent that the jury inferred [appellant] should have explained his defense after arrest or formal charges."

Aside from the lack of any evidence that appellant ever invoked his right to silence, the prosecutor was plainly referring to appellant's pre-arrest failure to identify Rojo at the scene. No reasonable juror would have inferred otherwise.

Even if any of appellant's claims of prosecutorial misconduct had merit, the error would be harmless. Given the overwhelming evidence of appellants' guilt, it is not reasonably probable he would have obtained a more favorable result but for the prosecutor's remarks. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

*Admissibility of DMV Document*

Appellant asserts that the certified DMV document offered to prove he was guilty of driving on a suspended license should have been excluded as inadmissible hearsay. He claims the prosecution failed to establish the document was admissible under the business records exception to the hearsay rule (Evid. Code, § 1271), and that the document also contained testimonial hearsay as contemplated in *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

Appellant's trial counsel did not object to the admission of the DMV document. Indeed, counsel expressly stated he had no objection. Appellant nevertheless invites us to address the claim on the merits "to forestall a subsequent claim of ineffectiveness of counsel[.]" (*People v. Martin* (1995) 32 Cal.App.4th 656, 661, disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10.) Because the claim is easily resolved, we accept appellant's invitation.

---

[5] (*Doyle v. Ohio* (1976) 426 U.S. 610, 627.)

9

Aside from the possible tactical reasons counsel may have had for declining to object, the DMV document was admissible as an official record (Evid. Code, § 1280) because the DMV is required to maintain records of all suspended and revoked licenses (§ 1800, subd. (b)). The prosecution did not have to present a witness to testify as to the document's identity or manner of preparation. (See *People v. George* (1994) 30 Cal.App.4th 262, 274.) Moreover, the document was not prepared for trial and does not amount to prior testimony or statements obtained during a police interrogation. It was prepared in the DMV's normal course of business of the DMV, i.e., "to provide a chronicle of some act or event relating to the public employee's duty." (*People v. Taulton* (2005) 129 Cal.App.4th 1218, 1225.) Accordingly, the document does not fall within the "core class of 'testimonial' statements" identified in *Crawford* and its progeny. (*Crawford, supra*, 541 U.S. at pp. 51-52; *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 309-310.) It follows that defense counsel's failure to object was not ineffective assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–696; *Thompson, supra*, 49 Cal.4th at p. 121, fn. 14.)

*Prior Prison Term Enhancements (Pen. Code, § 667.5, subd. (b))*

In a bifurcated court trial, appellant admitted he had suffered four prior convictions "within the meaning of Penal Code section 667.5(b)." Relying on *People v. Epperson* (1985) 168 Cal.App.3d 856 (*Epperson*) and *People v. Lopez* (1985) 163 Cal.App.3d 946 (*Lopez*), appellant contends there is insufficient proof of the prior prison term enhancements because the colloquy of his guilty plea only refers to the fact of his convictions. We disagree.

In *Epperson*, the court concluded that the defendant's admission of his prior convictions, which did not include an explicit admission of the separate prison term requirement, could not be construed "as including admissions of all the necessary elements of the enhancements alleged under Penal Code section 667.5, subdivision (b)." (168 Cal.App.3d at pp. 864–865.) In *Lopez*, the court stated: "[T]he record does not indicate that the amendment to the felony complaint was read to defendant, that he waived a reading thereof, or that he was ever advised that by admitting the validity of the

10

prior convictions he would also be admitting that he served separate prison terms therefor.  Thus, his admission that the prior convictions were valid cannot be construed as an admission of the allegations that he served prior, separate prison terms for each of those convictions."  (163 Cal.App.3d at p. 951.)

We decline to follow *Epperson* or *Lopez* to the extent they are understood to require reversal of a section 667.5, subdivision (b) enhancement where, as here, the defendant's admission of a prior conviction does not include an express admission of the separate prison term element.  Our Supreme Court has since made clear that the totality of the circumstances must be considered in determining whether a defendant has admitted serving a prior prison term.  (*People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*).)

The record unequivocally expresses appellant's understanding that he was admitting his prior convictions "pursuant to Penal Code section 667.5(b)."  Appellant also answered "yes" when asked if he "had enough time to discuss those convictions with [his] attorney and the rights and consequences [he had] with regard to them[.]"  Moreover, the information alleged that appellant had suffered four prior convictions pursuant to Penal Code section 667.5, subdivision (b), "and that a term was served as described in Penal Code section 667.5 for said offense(s), and that the defendant did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of five years subsequent to the conclusion of said term."

Viewing appellant's admissions in the context of the entire proceedings (*Mosby, supra*, 33 Cal.4th at p. 356), it is clear he was admitting the allegations set forth in the information.  (See *People v. Ebner* (1966) 64 Cal.2d 297, 303["[d]efendant's admission of the prior convictions is not limited in scope to the fact of the convictions but extends to all allegations concerning the felonies contained in the information"]; *People v. Cardenas* (1987) 192 Cal.App.3d 51, 61 ["admission of prior convictions where the charging information specifically alleges the convictions resulted in prior separate prison terms is deemed an admission such prison terms were separately served"]; see also *People v. Welge* (1980) 101 Cal.App.3d 616, 623, italics added ["admission of prior convictions cannot be construed as an admission that separate terms were served therefor,

11

*in the absence of an allegation in the information or complaint that the defendant served separate terms on the prior convictions*"].)  Appellant's claim of insufficient evidence accordingly fails.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

George Genesta, Judge

Superior Court County of Los Angeles

_____


Marilee Marshall and Galia Amram Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.